IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00737-MSK-KLM

KEITH PARKER,

    Plaintiff,

v.

MR. BILL RITTER, Governor of State of Colorado,
MR. ARISTEDES W. ZAVARAS, Executive Director,
MR. MARK BROADUS,
MR. PAUL HOLLENBECK,
MAJOR MR. TWOBEARS CHAVEZ,
MRS. AHLIN,

    Defendant(s).
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiff's **"Motion [sic] Emergency Temporary Restraining Order and or Preliminary Injunction"** [Docket No. 17; Filed July 31, 2008] ("First Motion"); **"Motion [sic] Injunctive Relief Temporary Restraining Order and or Preliminary Injunction"** [Docket No. 33; Filed September 2, 2008] ("Second Motion"); and **"Motion [sic] Emergency Temporary Restraining Order and or Preliminary Injunction** [Docket No. 51; Filed October 9, 2008] ("Third Motion") [collectively, the "Motions"]. I ordered Defendants to file a single response to the First and Second Motions on or before October 27, 2008 [Docket Nos. 45 & 48], and they did so [Docket No. 55]. I also ordered Defendants to respond to the Third Motion on or before November 14, 2008 [Docket No. 61], and they did so [Docket No. 62].

Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. COLO.L.Civ.R. 72.1.C., the matter

has been referred to this Court for recommendation. The Court has reviewed the Motions, Defendants' Responses, the entire case file, and the applicable law and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motions [##17, 33 & 51] be **DENIED**.

## I. Background

At the time Plaintiff filed his First Motion, he was incarcerated by the Colorado Department of Corrections ("CDOC") at the Arkansas Valley Correctional Facility ("AVCF") in Canon City, Colorado. At the time Plaintiff filed his Second Motion, he was incarcerated at the Limon Correctional Facility ("LCF") in Limon, Colorado [Docket No. 22]. On September 9, 2008, Plaintiff informed the Court that he had been transferred to the Buena Vista Correctional Facility ("BVCF") in Buena Vista, Colorado [Docket No. 40]. Finally, at the time Plaintiff filed his Third Motion, he was incarcerated at the Centennial Correctional Facility ("CCF") in Canon City, Colorado [Docket No. 44], where he appears to be presently incarcerated.

In each Motion, Plaintiff alleges that he is in imminent danger of serious injury.[1] In the First Motion, Plaintiff claims that while incarcerated at the AVCF, he was assaulted by other inmates. *First Motion* [#17] at 2. He also claims that at AVCF, he "is made to stay in open population with '<u>unidentifiable enemies</u>' and known enemies" and that his "life is in constant danger." *Id.* Plaintiff makes no specific injunctive demands in relation to the

---

[1] The Motions are similar to several that were denied at the beginning of this case [Docket No. 14] and in a previous case filed by Plaintiff, Civil Action No. 07-cv-01731-MSK-KLM [Docket Nos. 66 & 71]. In the present case, the motions were denied because Plaintiff failed to substantiate his claims that he was in immediate danger. In the previous case, which involved Plaintiff's incarceration at a county facility, Plaintiff's motions were denied as moot because Plaintiff was no longer within the supervision of the named Defendants.

First Motion.

In the Second Motion, Plaintiff claims that while incarcerated at LCF, he was in danger of "irreparable harm" and that "a contract has been placed on the plaintiff's life." *Second Motion* [#33] at 3. Plaintiff also claims that he will be assaulted at LCF "sooner or later if Injunctive Relief is denied," but he does not contend that he was specifically threatened by other inmates at LCF. Plaintiff appears to request that he be placed in protective custody at a CDOC prison in Florence, Colorado. However, there are no state prisons in Florence.

In the Third Motion, although Plaintiff does not allege that he has been specifically threatened at CCF, he claims that "sending me to [CCF] did not solve the custody issues and free the threat of violence and being victimized." *Third Motion* [#51] at 2. Further, "what the Plaintiff is trying to show the courts and get the U.S. Courts to see, understand [sic] is there is no where safe for the Plaintiff in [CDOC]." *Id.* He claims that prison officials have placed him "in the spot light" and "paraded [him] around with the title of a snitch, and [have helped] pass this label on and around." *Id.* He also claims that "[e]very facilities [sic] the Plaintiff has been to their [sic] has been problems to where he had to be moved. The Courts it's self [sic] can attest, witness [sic] partially to that. The Honorable Courts should be able to see it is a problem, something is wrong between Plaintiff and [CDOC]." *Id.* at 4. Plaintiff also advances a vague retaliation claim against unnamed CDOC officials. *Id.* at 2. Finally, while one of Plaintiff's key concerns in the First and Second Motions was his placement in the general population, in the Third Motion he complains about being taken out of the general population and placed in a more restrictive environment, i.e., segregation. *Compare Second Motion* [#33] at 3-5, *with Third Motion* [#51] at 3. Plaintiff

3

requests that the Court issue "a Protective Order for Protective Custody which is in the current custom to send the Plaintiff to a Protective Custody Facility out of State." *Id.*

In Defendants' Responses, Defendants contend that (1) Plaintiff's First and Second Motions are moot because he is no longer housed at the facilities in question; (2) there is no evidence that Plaintiff was assaulted at AVCF and, in fact, the only incident report contained in Plaintiff's inmate file indicates that Plaintiff, and not alleged enemy inmates, possessed a "shank"; (3) Plaintiff has been moved to different facilities on the basis of his complaints, not on the basis of any alleged threats on his life; (4) the relevant evidence reveals that Defendants have repeatedly attempted to address Plaintiff's fears and transfer him to new facilities where he is away from alleged enemies; and (5) there is no legal basis for the injunctive relief sought by Plaintiff in his Third Motion. *Response* [#55] at 2, 5; *Response* [#62] at 2, 6. They further argue that Plaintiff's segregation claim has no merit and that there is no factual or legal support for Plaintiff's unsubstantiated retaliation claim against unidentified CDOC officials. *Response* [#62] at 6-7, 9-10.

## II. Standard for Injunctive Relief

As a preliminary matter, because Plaintiff is proceeding *pro se*, the Court must construe his pleadings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the *pro se* litigants' advocate, nor should the Court "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).[2]

---

[2] Given Plaintiff's *pro se* status, although Defendants contend that Plaintiff's First and Second Motions are moot because they involve alleged incidents and danger at facilities where Plaintiff is no longer incarcerated, the Court chooses to consider all three Motions, and the

4

I find that Plaintiff is unable to meet his burden to show that a preliminary injunction is necessary.[3] Injunctive relief is an extraordinary remedy that should only be granted when the moving party clearly and unequivocally demonstrates its necessity. *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). In the Tenth Circuit, a party requesting injunctive relief must clearly establish that: (1) the party will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits. *Id.*

It is well established that "[b]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (citations omitted). Moreover,

> [b]ecause the limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held, we have identified the following three types of specifically disfavored preliminary

---

allegations contained therein, to determine whether Plaintiff is entitled to the ultimate injunctive relief that he seeks in this Third Motion, i.e., transfer out of state or placement in protective custody. Moreover, as Defendants are not necessarily tied to a specific facility, e.g., Governor Bill Ritter and Aristedes Zavaras, Plaintiff may be entitled to the relief that he seeks regardless of where he is presently incarcerated.

[3] Fed. R. Civ. P. 65(a) and (b) governs preliminary injunctions and temporary restraining orders. "Where the opposing party has notice, the procedure and standards for issuance of a temporary restraining order mirror those for a preliminary injunction." *Emmis Comm'ns Corp. v. Media Strategies, Inc.*, No. 00-WY-2507CB, 2001 WL 111229, at *2 (D. Colo. 2001) (unpublished decision) (citing 11A Charles Alan Wright, et al., *Federal Practice and Procedure* § 2951 (2d ed.1995)). While Plaintiff states that he seeks both a temporary restraining order and a preliminary injunction, because Defendants were given notice, the Court analyzes his Motions under the standards for a preliminary injunction.

> injunctions . . . (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that [he] could recover at the conclusion of a full trial on the merits.

*Schrier*, 427 F.3d at 1258-59 (citations omitted). These disfavored injunctions are "more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* at 1259.

Plaintiff seeks a preliminary injunction which would require Defendants to transfer Plaintiff to an out-of-state facility or to place him in protective custody. Given the relief Plaintiff seeks, the relief sought would alter the status quo rather than preserve it and would also require Defendants to act. For these reasons, the injunctive relief sought by Plaintiff "constitutes a specifically disfavored injunction" that "must be more closely scrutinized." *Id.* at 1259, 1261. Therefore, "the right to relief must be clear and unequivocal." *Id.* at 1258.

Additionally, I must consider well-established law that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215 (1976). Courts should grant injunctive relief involving the management of prisons only under exceptional and compelling circumstances. *Taylor v. Freeman*, 34 F.3d at 266, 269-70 & n.2 (4th Cir. 1994); *see also Citizens Concerned for Separation of Church & State v. Denver*, 628 F.2d 1289, 1299 (10th Cir. 1980). Indeed, the Tenth Circuit has stated that it "abhor[s] any situation or circumstance requiring the intervention of the federal courts in matters involving the administration, control and maintenance by the sovereign states of their penal systems. It is a delicate role assigned to the federal courts to display that restraint so necessary 'in

6

the maintenance of proper federal-state relations.'" *Battle v. Anderson*, 564 F.2d 388, 392 (10th Cir. 1977) (citation omitted).  As such, "intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts. . . . [This] is especially true where mandatory injunctive relief is sought and only preliminary findings as to the plaintiff's likelihood of success on the merits have been made." *Taylor*, 34 F.3d at 269 (citations omitted).

### III.  Analysis

To obtain injunctive relief, Plaintiff must show that he will suffer irreparable injury if his request for injunctive relief is denied.  *Schrier*, 427 F.3d at 1258.  "To constitute irreparable harm, an injury must be certain, great, actual 'and not theoretical.'" *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).  Irreparable harm is more than "merely serious or substantial" harm.  *Id.* (citation omitted).  The party seeking the preliminary injunction "must show that 'the injury complained of is of such *imminence* that there is a clear and present need for equitable relief' to prevent irreparable harm." *Id.* (citation omitted).  Therefore, to demonstrate irreparable harm, Plaintiff "must establish both that harm will occur, and that, when it does, such harm will be irreparable." *Vega v. Wiley*, 259 Fed. Appx. 104, 106 (10th Cir. Dec. 17, 2007) (unpublished decision).  Finally, an injunction is only appropriate "to prevent existing or presently threatened injuries.  One will not be granted against something merely feared as liable to occur at some indefinite time in the future." *Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931).

Plaintiff fails to adequately show that he is facing immediate and irreparable harm. While the allegations contained in the complaint and Motions are very serious, at this stage

7

of the proceedings, they are nothing more than allegations. Further, although Plaintiff has contended since as early as January 2008 (in No. 07-cv-01731-MSK-KLM) that he is in immediate danger of irreparable injury, except for his allegations of an attack which Defendants deny occurred, Plaintiff has not presented any evidence that his life is actually in danger. As to the alleged assault that occurred at the AVCF, there is no evidence in Plaintiff's inmate file that supports his contention that he was assaulted, nor does Plaintiff allege that he sustained any injury from the alleged attack [Docket No. 55-2]. Further, Plaintiff's statement that he will be assaulted "sooner or later" does not evidence a present threat but, rather, some indefinite and conjectural future threat. While the Court believes that Plaintiff genuinely feels threatened, there is no evidence to suggest that such a fear is reasonable. For instance, while Plaintiff claims to be in danger of unknown enemies, he also claims to be in danger of known enemies. However, Plaintiff has failed to name any known enemies who may want to harm him, nor has he indicated that any of those alleged inmates are presently incarcerated at CCF.[4] As such, not only does Plaintiff's unsubstantiated claim fail to demonstrate harm that exceeds more than "merely serious or substantial" harm, he fails to demonstrate any harm.

Plaintiff has also failed to adequately show that his current housing assignment places him in imminent danger. In his Third Motion, Plaintiff contends that his assignment at CCF is a "form of punishment" and that the CDOC imprisoned him at an "administrative segregation facility." *Third Motion* [#51] at 3. This claim is not contained within Plaintiff's

---

[4] To the extent that Plaintiff claims that he has a list of known enemies which Defendants allegedly refuse to copy, *Third Motion* [#51] at 3, Plaintiff has provided no explanation of why he could not include the list of names in his handwritten pleadings. Indeed, Defendants claim to be ignorant of the names of any known enemies of Plaintiff. *Response* [#62] at 5.

complaint, and Plaintiff fails to articulate how his current conditions of confinement either place him in imminent danger or violate a constitutional right. To the extent that Plaintiff is, indeed, in administrative segregation, he is arguably in a more protective environment where it would be harder for another inmate to harm him. Moreover, Plaintiff's objection to his current placement appears to be at odds with the arguments made in his previous Motions that his placement in the general population increases his risk of harm.

Plaintiff has also failed to adequately show that nonparty prison officials' alleged retaliation toward him places him in imminent danger or violates a constitutional right. In his Third Motion, Plaintiff contends that the CDOC, namely "low-level, mid-level staff, security, administration," have retaliated against him for filing the present lawsuit. *Id.* at 2. While he contends that prison officials have helped pass around the rumor that he is a snitch, he fails to articulate how such a rumor, even if his allegation were true, places him in imminent danger given his present conditions of confinement or that such conduct is linked to the filing of this lawsuit (especially considering that Plaintiff alleges that Defendants have been hostile toward him for more than eight years). *See Third Motion* [#51] at 3.

Next, even if Plaintiff could demonstrate some injury, he must demonstrate that "the threatened injury . . . outweighs whatever damage the proposed injunction may cause the opposing party" and that "the injunction, if issued, would not be adverse to the public interest." *Schrier*, 427 F.3d at 1258. Plaintiff addresses both factors in his Second Motion. First, Plaintiff notes that forcing Defendants to place him in protective custody would not unduly harm Defendants because it is in their best interest to ensure his safety. *Motion* [#33] at 3. He does not address, however, the important issue of the financial and

9

logistical burdens placed on Defendants if they were ordered to create a protective custody unit or to transfer him to an out-of-state facility. Moreover, the Court's interference with Defendants' placement decisions regarding Plaintiff would significantly undermine their discretion and autonomy. *See Taylor*, 34 F.3d at 269-70. While Plaintiff expresses the preference to be housed differently or transferred out of state, he fails to articulate how his preferences could be carried out with minimal impact on Defendants' day-to-day decisions. Further, the Court notes that Defendants have consistently demonstrated an acute responsiveness to Plaintiff's concerns such that the extreme action of Court intervention would not appear to be warranted [Docket No. 55-3]. Accordingly, the Court finds that Plaintiff has failed to make the requisite showing to tip this factor in his favor.

Second, Plaintiff appears to argue that the public interest would not be unduly impacted by any injunctive relief because greater protection within the CDOC would make it less likely that inmates would try to escape. *See Second Motion* [#33] at 3. As Plaintiff fails to articulate how his placement in protective custody would protect the public from the escape of other inmates or, alternatively, that such placement would not be adverse to the public interest, the Court finds that Plaintiff has failed to meet his burden in relation to this factor.

Finally, Plaintiff must show that he has a substantial likelihood of success on the merits of his claims. *Id.* Plaintiff brings Fifth and Eighth Amendment claims regarding Defendants' alleged failure to protect him from being assaulted by other inmates and their security and custody level classifications of him, including their failure to create and house him in a protective custody unit. *Complaint* [#16]. In relation to the present Motions, Plaintiff fails to specifically address whether he would succeed on the merits of his Fifth and

Eighth Amendment claims. Rather, Plaintiff asserts that "[w]here one's very right to life is at stake, and where prison officials control the conditions of confinement, thereby reducing the prisoner['s] ability to protect himself, it takes no great acumen to determine that, constitutionally, prison officials may not exercise their responsibility with wanton or obdurate disregard for or deliberate indifference to the preservation of the life in their care." *Second Motion* [#33] at 4. Contrary to Plaintiff's conclusory assertions, Defendants' alleged conduct, based solely upon these pleadings, does not automatically entitle Plaintiff to relief. *See Hall*, 935 F.2d at 1110 (holding that a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based"); *Bryant v. NFL, Inc.*, No. 07-cv-02186-MSK-MJW, 2007 WL 3054985, at *2 (D. Colo. Oct. 18, 2007) (unpublished decision) (holding that unverified, conclusory allegations will not support a motion for injunctive relief). While a situation "where prison officials disregard repeated warnings of danger to a particular prisoner and continually refuse to make the situation safer . . . by separating the prisoner from other inmates who previously have attacked him . . . or providing adequate safety," may, for example, constitute an Eighth Amendment injury, these circumstances do not appear to be present here. *See Grimsley v. MacKay*, 93 F.3d 676, 681 (10th Cir.1996).

As to the segregation and retaliation claims advanced for the first time in his Motions, Plaintiff fails to adequately support his allegations or indicate which named Defendants are responsible for these alleged injuries. *See Talley v. Hesse*, 91 F.3d 1411, 1413 (10th Cir. 1996) (noting that a prisoner's mere placement in segregation does not , on its own, give rise to the deprivation of a liberty interest); *Merritt v. Hawk*, 153 F. Supp. 2d 1216, 1224 (D. Colo. 2001) (requiring more than mere conclusory statement that inmate

has been retaliated against). As such, Plaintiff has not demonstrated a substantial likelihood of success on the merits of the claims in his complaint or Motions.

## IV. Conclusion

Plaintiff has failed to carry his burden of establishing that the circumstances under which he is currently incarcerated give rise to a substantial risk of serious harm or place him in imminent danger. Accordingly, as Plaintiff has failed to satisfy the four prerequisites to obtaining a preliminary injunction, I respectfully **RECOMMEND** that the Motions [## 17, 33 & 51] be **DENIED**.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have ten (10) days after service of the Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dept. of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: November 18, 2008

                                                   BY THE COURT:

                                                   s/ Kristen L. Mix
                                                 U.S. Magistrate Judge
                                                 Kristen L. Mix