# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Honorable Marcia S. Krieger

Civil Action No. 08-cv-00737-MSK-KLM

MR. KEITH PARKER,

        Plaintiff,

v.

BILL RITTER,
ARISTEDES W. ZAVARAS,
MARK BROADUS,
PAUL HOLLENBECK,
MR. ARELLANO,
CAPTAIN  HALL,
LEONARD VIGIL,
DAVID M. ZUPAN,
DONNA WEBSTER,
M. MCCORMICK,
MR. ENRIQUEZ,
LT. PIPER
SUSAN JONES,
JILL HOGGARTH,
DR. MICHAUD, and
ROBERT STEINBECK,

        Defendants.

---

## OPINION AND ORDER GRANTING IN PART MOTION TO DISMISS

---

THIS MATTER comes before the Court on the Defendants' Motion to Dismiss **(#201)**, to

which the Plaintiff Keith Parker responded **(#217)**,[1] and the Defendants replied **(#221)**.  Having

---

[1] Mr. Parker titled his response a "Motion to Strike the Defendants [sic] Motion to Dismiss and Grant Relief."  However, as the document was clearly filed in response to the Defendants' Motion to Dismiss and addresses the arguments made in the Motion to Dismiss, the Court construes this document as a response.  To the extent Mr. Parker seeks any additional relief in this motion, the motion is denied.

Mr. Parker has also moved to dismiss the Defendants' Motion to Dismiss **(#238)**, arguing that no discovery has taken place and that the evidence obtained through discovery will demonstrate that he is entitled to relief on his claims. The Court liberally construes this as a motion to strike the Defendants'

considered the same, the Court **FINDS** and **CONCLUDES** the following.

## I.    Jurisdiction

This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## II.    Issues Presented

As discussed *infra*, this action grows out of the circumstances of Mr. Parker's

confinement with the Colorado Department of Corrections ("CDOC").  Mr. Parker's main

complaint is that various CDOC personnel have disregarded what he perceives to be a serious

threat to his life and health by certain gang members in the prison population where he is and has

been housed.  He also alleges that he has not been provided medical care, he has been placed in

administrative segregation, and has been retaliated against for engaging in constitutionally

protected activities.

In the Motion to Dismiss, the Defendants[2] request dismissal on a number of grounds: (1)

qualified immunity; (2) failure to allege personal participation on behalf of each Defendant; (3)

failure to allege a physical injury; and (4) failure to state a claim upon which relief can be

granted.  The issue presented, therefore, is whether any of Mr. Parker's claims, as liberally

construed by this Court, are sufficient to survive a motion to dismiss.

## III.    Material Facts

Construing the Amended Complaint **(#191),** and the assertions made by Mr. Parker

---

Motion to Dismiss as premature.  Such argument, however, is inappropriate as motions to dismiss
pursuant to Fed. R. Civ. P. 12(b)(6) are based on the allegations in the complaint rather than on any
evidence obtained through discovery. Accordingly, this motion is denied.

[2]  Because the motion does not distinguish between Defendants, the Court assumes that all
Defendants assert each argument.

liberally,[3] the Court understands the following facts to be alleged.

In 2004, Mr. Parker completed a term of incarceration in the CDOC. During this term of incarceration, he was assaulted and threatened by members of certain a gang or gangs who believed that he had cooperated with law enforcement in a case in Chicago.

In 2008, Mr. Parker plead guilty to a drug offense and was sentenced to a term of 12 years of imprisonment in the CDOC. Defendant Hollenbeck is and has been responsible for authorizing and approving Mr. Parker's placements and transfers between facilities in the CDOC.

After a short, initial placement in the Denver Reception and Diagnostic Center ("DRDC"), Mr. Parker was designated to serve his sentence in the Arkansas Valley Correctional Facility ("AVCF"). During his entry interview with Lieutenant Lucero, a Gang Intelligence Officer, Mr. Parker recounted the previous assaults by gang members and requested protection. He iterated this request in letters to Defendants Zavaras (Director of the Colorado Department of Corrections), Arellano (Warden of AVCF), and Hollenbeck. Despite these requests, Mr. Parker was released into the general population at AVCF. When Mr. Parker was assigned to Housing

---

[3] In construing Mr. Parker's pleadings, the Court is mindful that he is proceeding *pro se* and, therefore, the Court construes his pleadings liberally and holds him to a "less stringent standard" than pleadings drafted by lawyers in accordance with *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Such liberal construction is intended merely to overlook technical formatting errors, poor writing style, and other defects in the party's use of legal terminology, citation, and theories. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court, however, cannot act as a *pro se* litigant's legal advocate, and a *pro se* plaintiff retains the burden to allege sufficient facts to state a viable claim. Furthermore, *pro se* status does not relieve a party of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court must apply the same standard to counsel licensed to practice law and to a *pro se* party. *See McNeil v. United States*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

The Court notes that the Amended Complaint was filed by counsel and, therefore, would not be entitled to the same liberal construction as a *pro se* pleading. However since then, counsel has withdrawn and Mr. Parker has responded to the Motion to Dismiss *pro se*. To ensure that Mr. Parker's arguments are liberally interpreted, and the need for further amendment of the Complaint, the Court has elected to give the Amended Complaint and the response to the Motion to Dismiss be given a liberal interpretation.

Unit #6, he told Captain Hall of the danger he faced. She responded that he should "man up and fight, do what you need to do, handle your business."

Mr. Parker was placed in a cell with a gang member from one of the gangs that he feared. The cellmate assaulted Mr. Parker on June 5, 2008. Their cell was subsequently searched and a shank was found. The shank was hidden in the cell by the cellmate at the gang's direction. Pursuant to the order of Lieutenant Steinbeck, both Mr. Parker and his cellmate were placed in administrative segregation. Mr. Parker was not provided a hearing prior to his detention. In addition, although his cellmate was released after ten days, Mr. Parker was kept in administrative segregation for 45 days, a period allegedly longer than that prescribed by prison rules.

Apparently in an effort to protect him from the gangs at AVCF, Mr. Parker was transferred him to the Limon Correctional Facility ("LCF"). Before his transfer, Mr. Parker told his case manager, Mr. Enriquiz, that the gangs at LCF also posed a threat to him. When he arrived at LCF, Lieutenant Piper interviewed Mr. Parker about his concerns. Lieutenant Piper told Mr. Parker that he could "sweat" until he was transferred to another facility. Lieutenant Piper then placed Mr. Parker in a cell that was visible to general population inmates, and put a pink tag on the cell door indicating that Mr. Parker was a snitch. There is no allegation that Mr. Parker was either assaulted or threatened while at LCF.

Mr. Parker was then transferred to the Buena Vista Correctional Facility ("BVCF"), even though he had previously advised the personnel at the DRDC that he would also be in danger at BVCF. At BVCF, Mr. Parker refused to enter the general population. At the direction of Mr. Vigil (Gang Intelligence Administrator for the CDOC), Lieutenant McCormick, the Gang Intelligence Officer at BVCF, gave Mr. Parker the option of returning to LCF or being placed in "the hole", which the Court understands to mean administrative segregation. Mr. Parker was

placed in administrative segregation. At some later date, while in the BVCF dining hall, Mr. Parker was allegedly confronted and threatened by a group of gang members, but there is no allegation that he was assaulted.

Mr. Parker told Lieutenant McCormick about the confrontation and threat, and consequently was transferred to the Centennial Correctional Facility ("CCF"), where he is currently confined. There, Mr. Parker was placed in a "pod" with gang members, but he has had no interaction with them because all prisoners at CCF are on lock-down 23 hours each day. There is no indication that Mr. Parker has been assaulted or directly threatened at CCF. He is, however, restricted to indoor exercise for one hour five times a week, and apparently is not permitted outdoor exercise.

Mr. Parker contends that his mental health is suffering because he is not allowed any outdoor recreation or exercise. He further alleges that he suffers from mental health and chronic drug problems, that he has continually requested medical treatment for these issues from Defendant Jones (the CCF Warden), and Defendant Michaud (the Mental Health Administrator for the CDOC), but that he has not received any treatment. In contradiction, however, Mr. Parker states that he was seen by Defendant Jill Hoggarth, a mental health clinician at CCF, and that she did not speak to him in professional manner and was deliberately indifferent to his needs. In addition, on November 2008, upon a tip that Mr. Parker had blood on his shirt, Ms. Hoggarth put him on a suicide watch, during which he was restrained for 24 hours, without clothing. Ms. Hoggarth testified that Mr. Parker would not take his medication at a disciplinary hearing November 2008.

Mr. Parker states that he has been told by Defendants McCormick, Webster and Piper and others that he will be placed in administrative segregation if he does not stop filing

grievances and initiating lawsuits. He also contends that Defendant Donna Webster has been going through his legal mail, and has told him that if he kept complaining about administrative segregation, he would "be there forever". Mr. Parker informed Defendant Zupen (Associated Warden at CCF) that he considers this harassment. He further alleges that he has received two Code of Penal Discipline violations for his hair and not trimming his fingernails.

Based on these factual allegations, it appears that Mr. Parker may assert several claims pursuant to 42 U.S.C. § 1983[4]: (1) a substantive and/or procedural due process claim against Lieutenant Steinbeck, Mr. Vigil, and Lieutenant Piper[5] for placement in administrative segregation; (2) an Eighth Amendment claim for placement at CCF against Mr. Hollenbeck; (3) an Eighth Amendment claim against Warden Jones for the conditions of his confinement at CCF; (4) an Eighth Amendment claim against Director Zavaras, Warden Arellano, Mr. Hollenbeck, Captain Hall, Mr. Vigil, Lieutenant Piper, and Lieutenant McCormick for failure to protect; (5) an Eighth Amendment claim against Dr. Michaud, Ms. Jones, and Ms. Hoggarth for failure to provide medical treatment; (6) and a retaliation claim for filing this lawsuit and/or filing prison

---

[4] Mr. Parker's Amended Complaint **(#191)** specifically identifies five claims against all of the Defendants pursuant to 42 U.S.C. § 1983: (1) failure to protect under the Eighth Amendment for failing to place Mr. Parker in protective custody and instead placing him in administrative segregation; (2) failure to protect under the Eighth Amendment for placing Mr. Parker in the general population of the same institutions as his enemies; (3) failure to protect under the Eighth Amendment for placing Mr. Parker in a cell with one of his enemies while he was at the Arkansas Institutional Facility; (4) denial of access to the courts under the First Amendment; and (5) retaliation for filing this lawsuit and other grievances.

[5] Mr. Parker has asserted all of his claims against all of the Defendants in their individual and official capacity. The Court is mindful that individual liability under section 1983 must be based on personal involvement in the alleged constitutional violation. *See Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). Accordingly, as individual claims, the Court construes each only against those defendants who are alleged to have personally participated in the alleged deprivations. The Court notes that although a supervisor may be personally liable for the actions of an inferior if the supervisor personally participated in the conduct, exercised control or direction over it, failed to supervise, failed to train or tacitly authorized the conduct that resulted in the constitutional deprivation, there are no allegations upon which a claim of supervisory liability can be based. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008); *Currier v. Doran*, 242 F.3d 905, 925 (10th Cir. 2001).

grievances against Lieutenant McCormick, Ms. Webster, and Lieutenant Piper.[6]

## IV.    Analysis

The Court begins with the Defendants' claims of qualified immunity.  The doctrine of

qualified immunity protects government officials who perform discretionary government

functions from liability for civil damages and the obligation to defend the action.  *See Johnson v.*

*Fankell*, 520 U.S. 911, 914 (1997); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  This

immunity is only applicable, however, if the official's conduct did not violate clearly established

constitutional or statutory rights that would have been known by a reasonable government

official.  *See Harlow*, 457 U.S. at 818; *McFall v. Bednar*, 407 F.3d 1081, 1087 (10th Cir. 2005).

When a defendant raises a qualified immunity defense, the burden shifts to a plaintiff to

satisfy a two-part test.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Green v. Post*, 574 F.3d

1294, 1300 (10th Cir. 2009).  A plaintiff must show that he or she had a constitutional right that

was infringed (the "violation prong"), and that such right was clearly established at the time of

the alleged infringement (the "clearly established prong").  Although a plaintiff must ultimately

establish both elements to avoid application of the doctrine, the Court has discretion to consider

the elements in any order.  *See Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009); *Green*, 574 F.3d

---

[6] Even liberally construing Mr. Parker's allegations, the Court finds no facts that would give rise an Eighth Amendment claim for placement at AVCF or failure to protect at CCF.  Mr. Parker does not allege that he notified anyone of the danger to him from gangs at AVCF prior to his placement there.  As to CCF, he has not alleged that he was ever placed in close proximity to any gang member at CCF.
    Nor do the facts, as currently alleged, give rise to a racial discrimination or denial of equal protection claim. Although Mr. Parker alleges that Lieutenant Piper made a racial comment, there is no allegation linking the comment to any action taken against him.
    Finally, although Mr. Parker complains that he has lacked access to a law library and materials while in administrative detention, this is not sufficient to state a denial of access to the courts claim under the First Amendment. To state a denial of right of access to the courts claim, an inmate must state facts that demonstrate a prejudice to him in pursuing litigation. *See Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996).  Here, no prejudice has been alleged.

at 1299.

Under the violation prong, a plaintiff must show that a defendant's actions deprived him or her of a constitutional or statutory right. *See Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995). Identification of a constitutional right in the abstract is insufficient; instead, a plaintiff must precisely articulate the clearly established right that was allegedly violated and specifically identify the defendant's conduct that violated the right. *See Green*, 574 F.3d at 1300. In the context of a motion to dismiss, this determination is made pursuant to the Rule 12(b)(6) standard. *See Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1249 (10th Cir. 2008).

Rule 12(b)(6) requires that a be dismissed if the complaint does not contain enough facts to make the claim "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face if the complaint contains sufficient facts for a court to draw an inference that the defendant is liable for the alleged misconduct. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *id.* at 556). Although a plaintiff is not required to include detailed factual allegations in a complaint, the complaint must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" and must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In reviewing a complaint under Rule 12(b)(6), a court should accept, as true, all well-pleaded facts and construe all reasonable allegations in the light most favorable to a plaintiff. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

Here, the Defendants assert qualified immunity as a defense and argue that Mr. Parker's claims should be dismissed for failure to state a claim. Because the 12(b)(6) standard is used to evaluate the violation prong of the qualified immunity analysis, these two arguments collapse

into a single analysis. If there are insufficient facts to support a violation and no amendment can remedy the problem,[7] a defendant can be entitled to qualified immunity and dismissal of the claim.

Under the clearly established prong, the question is whether the identified right was clearly established based on facts similar to those in this case. *Brosseau v. Haugen*, 543 U.S. 194, 199–200 (2004). Typically, the inquiry is whether, on the operative date, there was binding authority from the Supreme Court or Tenth Circuit (or the clear weight of authority from other circuits) recognizing that the conduct alleged in this case would constitute a violation of federal law. *York v. City of Las Cruces*, 523 F.3d 1205, 1211–12 (10th Cir. 2008). The inquiry is not whether there was previous case with identical facts, but instead, whether prior caselaw put the defendants on notice that the conduct alleged in the case would be unconstitutional. *See Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006). This is essentially a legal question determined by application of an objective standard. *See Crawford-El v. Britton,* 523 U.S. 574, 589-90 (1998).

A.    Administrative Segregation

Mr. Parker alleges that he was placed in administrative segregation on two occasions without a hearing: first, by Lieutenant Steinbeck at AVCF after a shank was discovered in his cell and then, by Mr. Vigil and Lieutenant Piper upon arrival at LCF after he refused to go into the general population. Even with liberal construction of the allegations, however, they are

_____

[7] Normally, the Court affords a plaintiff an opportunity to amend the complaint to cure any pleading deficiencies. Here, however, there is no justification for doing so. Mr. Parker's response brief has not requested the opportunity to amend the Amended Complaint should his pleading be found wanting, he was but no longer is represented by counsel and the Court has liberally construed any additional factual allegations contained his Response as if they were included in the Amended Complaint. In addtion, the Amended Scheduling Order's (**#181**) deadline for amendment of the pleadings expired in June 2009.

insufficient to state a claim for violation of Mr. Parker's due process rights.

The Fourteenth Amendment guarantees due process only when an individual is deprived of life, liberty, or property. *See Chambers v. Colo. Dep't of Corr.*, 205 F.3d 1237, 1242 (10th Cir. 2000). Changing a inmate's classification, including to administrative segregation, does not alone deprive the inmate of liberty because he is not entitled to a particular degree of liberty in prison. *See Trujillo v. Williams*, 465 F.3d 1210, 1225 (10th Cir. 2006); *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994). A liberty interest may be created, however, if the conditions of confinement in administrative segregation impose an "atypical and significant hardship" on the inmate in relation to the ordinary incidents of prison life, generally based on degree and duration. *See Estate of DiMarco v. Wyo. Dep't of Corr.*, 473 F.3d 1334, 11339 (10th Cir. 2007) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *Trujillo*, 465 F.3d at 1225. In making this determination, relevant factors are whether (1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement; and (4) the placement is indeterminate. *See DiMarco*, 473 F.3d at 1342.

Neither the Amended Complaint nor Mr. Parker's assertions contain facts that would establish that the conditions of Mr. Parker's confinement in administrative segregation were of a significant degree or duration to constitute atypical or significant hardship. As to his placement in administrative segregation at AVCF, Mr. Parker alleges that this based on the discovery of a shank inside the cell. Thus, it was admittedly done in for legitimate penological purposes—safety and discipline. There are no allegations concerning the conditions in administrative segregation, that Mr. Parker's overall incarceration was extended by placement in administrative segregation, or that his sentence to administrative segregation was indeterminate.

Although Ms. Parker alleges that he was placed in administrative segregation for 45 days while his cellmate was only in administrative segregation for ten days for the same offense, this single variance is insufficient to cause his confinement in administrative segregation to be considered an "atypical and significant hardship." (Indeed, it may be that the extension of the administrative segregation was to ensure Mr. Parker's safety.) Even though Mr. Parker's confinement varied from that of his cellmate,[8] there is no factual allegation or argument that his confinement was outside the range of confinements at AVCF for disciplinary infractions overall. Thus, there is no indication that his confinement was atypical of the incidents of ordinary prison life.

Similarly, Mr. Parker's placement in administrative segregation at BVCF for 12 days did not impose an "atypical and significant hardship" on Mr. Parker. He was placed in administrative segregation for safety reasons as he refused to go into the general population for fear of the gang members at BVCF. His confinement was not indeterminate; it was imposed as a safety measure until he was transferred to CCF. Again, there are no allegations from which the Court can conclude that this confinement was extreme or that it extended the overall term of incarceration.

Thus, Mr. Parker's allegations are insufficient to establish a violation of his rights to due process. Accordingly, Lieutenant Steinbeck, Mr. Vigil, and Lieutenant Piper are entitled to qualified immunity on this claim and it will be dismissed.

B.     Placement at CCF

---

[8] Although in some circumstances, a difference in treatment could give rise to an Equal Protection claim, here it does not because there is no allegation that Mr. Parker and his cellmate were similarly situated other than that they were both placed in administrative segregation. *See Hennigh v. City of Shawnee*, 155 F.3d 1249, 1257 (10th Cir. 1998). The are no facts regarding the specific disciplinary infraction that each was convicted of, the disciplinary histories of each individual, and the conduct of each during their confinement in administrative segregation.

Mr. Parker also contends that his assignment to CCF, where the inmates are on lock-down 23 hours per day, violates his constitutional right to procedural and substantive due process. The Court assumes that this claim is asserted against Mr. Hollenbeck because he was the person in charge of all placements and transfers.

Generally, prison officials have discretion to transfer prisoners "for whatever reason or for no reason at all." *See Meachum v. Fano*, 427 U.S. 215, 225 (1976) (holding that between prisons transfer to a substantially less agreeable prison did not implicate the prisoner's due process rights). However, in *Wilkinson v. Austin*, 545 U.S. 209, 223–24 (2005), the Supreme Court determined that a prisoner's liberty interest was violated by being housed at Ohio's supermax facility without some procedural due process protections. The Supreme Court found that the incidents of confinement to the supermax facility, when taken in combination, were sufficient to constitute an "atypical and significant hardship." The Court noted that at the supermax facility, almost all human contact was prohibited, including conversations between cells, the lights are on for 24 hours, and exercise is for only an hour a day in a small indoor room. Although these conditions were similar to any solitary confinement facility, the Court found two additional factors persuasive: (1) placement was indefinite and reviewed only annually, and (2) placement at the supermax facility disqualified a prisoner from parole consideration. The Tenth Circuit has interpreted *Wilkinson* as requiring courts to look to a variety of factors in determining whether a liberty interest exists. *See DiMarco*, 473 F.3d at 1340–42. Thus, the Tenth Circuit turned to the four factors discussed *supra*.

Mr. Parker's confinement is not comparable to that described in *Wilkinson.* His placement appears to be based on the safety concerns that Mr. Parker himself actively asserted. Mr. Parker was placed at three other facilities prior to his current placement, all of which he

contended were too dangerous. There is no allegation that there is another institution where Mr. Parker can be placed that would provide him with both security and greater freedom. He does not contend that his overall incarceration is lengthened by his placement at CCF or give any information as to the conditions at CCF other than to say that he is on 23 hour per day lock-down. He has not provided any information as to when or how often his placement is reviewed or describe any process which is ordinarily provided but which he was denied. Thus, the Court concludes that Mr. Parker's allegations are insufficient to establish a constitutional violation of either his procedural or substantive due process rights.

C.      Cruel and Unusual Punishment

Mr. Parker alleges that his placement at CCF, where he is on 23-hour per day lockdown and limited to indoor exercise for one hour five times per week, constitutes cruel and unusual punishment prohibited by the Eighth Amendment. The Court presumes that this claim would be asserted against Defendant Jones (Warden at CCF), and any superiors in their official capacities.[9] Essentially, this is a claim against the Colorado Department of Corrections.

An Eighth Amendment claim has both an objective component—whether the deprivation is sufficiently serious—and a subjective component—whether the official acted with a sufficiently culpable state of mind. *See Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 809 (10th Cir. 1999) (citing *Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991). As to the objective component, the Eighth Amendment prohibits the unnecessary and wanton infliction of pain, sentences that

---

[9] The Amended Complaint is devoid of any allegation regarding any Defendants' personal participation in determining the conditions his confinement at CCF. Therefore, Mr. Parker cannot assert an Eighth Amendment claim against any Defendant in their individual capacities. As discussed *infra*, however, an official capacity claim is proper when a plaintiff seeks prospective injunctive relief to force the agency to do or cease doing something. *See Hafer v. Melo*, 502 U.S. 21, 25–27 (1991). This is the situation here. The defense of qualified immunity is not applicable.

are grossly disproportionate to the severity of the crime, or conditions that result in an unquestioned and serious deprivation of basic human needs. *See Mitchell v. Maynard*, 80 F.3d 1433, 1441–42 (10th Cir. 1996). Thus, prisons must provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from bodily harm. *See Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Prisons run afoul of these requirements if conditions result in the denial of "the minimal civilized measure of life's necessities" When determining whether there has been a violation of the Eighth Amendment, courts look to the conditions of confinement as a whole, *i.e.*, analyzing all deprivations in combination. *See Mitchell*, 80 F.3d at 1442. In cases challenging the conditions of a prisoner's confinement, the subjective standard is one of deliberate indifference to inmate health or safety. *See Perkins*, 165 F.3d at 809 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A court may infer that a prison official knew of a substantial risk from the very fact that the risk was obvious.

With respect to outdoor exercise, the Tenth Circuit has acknowledged that some degree of regular outdoor exercise is important to the psychological and physical well being of prisoners. *See Bailey v. Shillinger*, 828 F.2d 651, 653 (10th Cir. 1987). It has also determined that continuous and prolonged denial of outdoor exercise can constitute an Eighth Amendment claim. *See Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir. 2006) (finding that an extended deprivation of outdoor exercise (three years) was a sufficiently serious deprivation). *But see Ajaj v. United States*, 293 Fed. App'x , 584 (10th Cir. 2008) (unpublished) (concluding that deprivation of outdoor exercise for a year was insufficiently serious to constitute an Eighth Amendment violation). On a motion to dismiss, this allegation of extended deprivation of outdoor exercise is sufficient to establish both the objective and subjective components of the

Eighth Amendment.

Taking all his allegations as true, Mr. Parker has sufficiently alleged an Eighth Amendment violation.

D.      Failure to Protect

Mr. Parker generally alleges that Director Zavaras, Warden Arellano, Mr. Hollenbeck, Captain Hall, Mr. Vigil, Lieutenant Piper, and Lieutenant McCormick have violated his Eighth Amendment rights by failing to take adequate steps to protect him from the danger posed to him from gang members.

Prison officials have a duty to protect inmates from violence by other inmates. *See Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003). As with all Eighth Amendment claims, to establish a failure to protect claim, the plaintiff must show both an objective component—that he is incarcerated under conditions posing a substantial risk of serious harm—and a subjective component—that the prison official acted with deliberate indifference to the prisoner's safety. The subjective component requires that a prison official be aware of facts from which it can be concluded that a substantial risk of harm exists and that the official draw such inference. Mere negligence is not sufficient to establish "deliberate indifference"; rather, the standard requires recklessness, *i.e.*, disregarding a risk of which the official was aware.

The Court finds that there are sufficient facts to state a claim that Director Zavaras, Mr. Hollenbeck, Warden Arellano,[10] and Captain Hill failed to protect him with regard to Mr. Parker's placement in a cell with a gang member at AVCF. Mr. Parker alleges that he told each of these defendants of the prior threats and assaults by gang members, but that they disregarded

---

[10] The Court has some doubt as to whether receipt of letters requesting protection gives rise to personal involvement by Director Zavaras, Warden Arellano or Mr. Hollenbeck, but that argument has not been raised by them, and at this juncture the allegations are construed most favorably to Mr. Parker.

the danger resulting both in an assault on Mr. Parker.

As to Mr. Parker's treatment at LCF, the Court finds insufficient facts to state a claim. Although Lieutenant Piper placed Mr. Parker in a cell and tied a pink tag to the door that identified Mr. Parker as a "snitch", there are no facts demonstrating that Mr. Parker was in any danger while at LCF. This is also true with regard to Mr. Parker's placement at BVCF and CCF.

Turning to the clearly established prong of the qualified immunity analysis as to the circumstances at AVCF only, the Court concludes that it was clearly established that a prison official's decision to ignore an inmate's specific allegations that he was in danger from specific gangs and to place him in a cell with a gang member violates the prisoner's constitutional rights. Prison officials cannot recklessly fail to take action to protect an inmate from situations presenting a substantial risk of serious harm. *See, e.g.*, *Verdecia*, 327 F.3d at 1175. The threat of physical assaults is sufficiently "serious" under the failure to protect rubric. *See Curley v. Perry*, 246 F.3d 1278, 1282 (10th Cir. 2001). In a factually similar case, *Howard v. Waide*, 534 F.3d 1227 (10th Cir. 2008), the Tenth Circuit determined that prison officials cannot constitutionally refuse to separate an inmate from gang members when they have knowledge of a specific gang's violent threats toward the inmate, previous physical assaults against the inmate by members of that gang, and that gang members had approached the inmate.

Although the facts in *Howard* are not identical to those in this case, they are sufficiently analogous to put a prison officials on notice that when an inmate, such as Mr. Parker, has been assaulted and threatened by gang members, prison officials cannot recklessly ignore future safety concerns. *See Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006). At this juncture, the Court finds that the doctrine of qualified immunity does not bar individual claims against Director Zavaras, Warden Arellano, Mr. Hollenbeck and Captain Hill for failure to protect Mr.

Parker at AVCF.   It does, however, bar the claims against Mr. Vigil, Lieutenant Piper, and Lieutenant McCormick and those will be dismissed.

C.   Medical Care

Mr. Parker alleges that Dr. Michaud, Warden Jones, and Ms. Hoggarth denied him medical care for his mental health and drug additional problems.  As noted *supra*, the Eighth Amendment prohibits the unnecessary and wanton infliction of pain.  *See Mitchell*, 80 F.3d at 1441–42.  In the context of medical care, the deliberate indifference to the serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain.  *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976).

In this case, the allegations do not identify any serious medical need nor that anyone acted with deliberate indifference to such a need.  Serious medical needs are those that have been diagnosed by a physician as mandating treatment or ones that are so obvious that even a lay person could recognize the necessity of a doctor's attention.  *See Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).  The Amended Complaint generally alleges that Mr. Parker has mental health and drug problems, but neither it nor Mr. Parker specify a medical condition, a diagnosis, or the type of treatment that he required.  Mr. Parker's subjective allegations of a general medical need and pain are insufficient to state a claim.

In addition, there are no facts to suggest that any Defendant was aware of Mr. Parker's medical needs and disregarded them.[11]  To the contrary, the Amended Complaint alleges that Mr. Parker was evaluated by Ms. Hoggarth for his mental health problems.  Although he did not care for her treatment or attitude, there are no facts that suggest that she or any other person was

---

[11]  Ineffective and negligent treatment does not establish an Eighth Amendment violation.  *See DeShaney v. Winnebago Coutny Dep't of Soc. Servs.*, 489 U. S. 189, 198 n.5 (1989).

aware of a serious medical need and failed to provide treatment. Accordingly, the facts alleged are insufficient to state a claim for denial of medical care against Dr. Michaud, Ms. Jones, and Ms. Hoggarth. They are entitled to qualified immunity on this claim, and it is dismissed.

E.      Retaliation

The Amended Complaint alleges that Mr. Parker has been retaliated against by Lieutenant McCormick, Ms. Webster, and Lieutenant Piper for filing unspecified lawsuits and prison grievances. In this analysis, the Court turns first to the clearly established prong. It is well established that prison officials may not retaliate against or harass an inmate based on the inmate's exercise of his right of access to the courts. *See Green v. Johnson*, 977 F.2d 1383, 1389 (10th Cir. 1992). Moreover, retaliation is actionable under section 1983. *See Smith v. Maschner*, 899 F.2d 940, 948 (10th Cir. 1990).

As to the violation prong, to maintain a retaliation claim under section 1983, a plaintiff must demonstrate (1) the plaintiff was engaged in a constitutionally protected activity; (2) the defendant's actions caused the plaintiff to suffer an injury sufficient to chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's adverse action was substantially based on the plaintiff's exercise of a constitutionally protected right. *See Mimics, Inc. v. Vill. of Angel Fire*, 394 F.3d 836, 847 (10th Cir. 2005).

The allegations are sufficient to meet each of these elements. First, Mr. Parker alleges that the threats of continued and prolonged placement in administrative segregation were in response to the filing of unspecified lawsuits and other prison grievances.[12] Seeking redress in

_____

[12] Although Mr. Parker's allegations are unclear as to the specific lawsuits and grievances that he alleges he was retaliated against for filing, the Court notes that his Amended Complaint he only refers to this lawsuit. The Amended Complaint was filed approximately fifteen months after the lawsuit was initiated.

the courts is unquestionably a constitutionally protected action and the Tenth Circuit has determined that the use of prison grievances, which under the Prison Litigation Reform Act are required to be exhausted prior to a civil lawsuit, are also constitutionally protected activities. *See Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996); *Mallard v. Tomlinson*, 206 Fed. App'x 732, 737 (10th Cir. Oct. 30, 2006) (unpublished).

Second, although the Court has some doubt as to whether Mr. Parker has suffered an injury,[13] the allegations of threats of continued and prolonged confinement to administrative segregation are sufficient to satisfy Mr. Parker's burden to demonstrate that the Defendants' actions were sufficient to chill a person of reasonable firmness. Although it appears that Mr. Parker was initially placed in administrative segregation at CCF for safety reasons, a threat of prolonged confinement to administrative segregation as punishment for filing lawsuits or grievances may still act to chill a person from engaging in these activities. Threats are actionable in a section 1983 retaliation claim. *See Zarska v. Higgins*, 171 Fed. App'x 255, 259–60 (10th Cir. 2006) (concluding that the filing of disciplinary charge, even though later dismissed, was sufficient to chill a prisoner from exercising his First Amendment rights); *Smith v. Plati*, 258 F.3d 1167, 1176 (10th Cir. 2001) ("Any form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom."); *Brodhein v. Cry*, 584 F.3d

---

[13] It is unclear whether Mr. Parker continues to be housed at CCF solely for safety reasons or as retaliation for having filed grievances or initiated this action. This may be clarified in conjunction with the pending motion for summary judgment, but in the context of this motion to dismiss, the Court construes the allegations most favorably to him, leaving open the possibility the retaliation was a motivation for his present housing.

Furthermore, Mr. Parker alleges that he has been cited twice for disciplinary violations for his hair and his fingernails. He does not expressly state, but implies that these violations were imposed in retaliation for his grievances and the filing of this suit.

1262, 1270 (9th Cir. 2009) ("A retaliation claim may assert an injury no more tangible than a chilling effect on First Amendment rights."). Even if Mr. Parker could legitimately be housed in administrative segregation for the entirety of his term of imprisonment based on safety or other concerns, if he is housed there based on a retaliatory motive, then the retaliation is actionable. *See DeLoach v. Bevers*, 922 F.2d 618, 620 (10th Cir. 2005) ("An act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper."). Accordingly, the Court concludes that Mr. Parker's allegations are sufficient to survive a motion to dismiss on qualified immunity grounds on Mr. Parker's First Amendment claim for retaliation against Ms. Webster, Lieutenant McCormick, and Lieutenant Piper.

      F.      Official Capacity Claims

      Mr. Parker asserted all claims against all of the Defendants in both their official and individual capacities. Bringing a suit against a state official in his or her official capacity is simply an alternative way of asserting a suit against the state itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, provides immunity to states for federal suits for damages brought against them by their own citizens. *See Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990).

      Given that an official capacity claim is not directed at the official him- or herself, but against the agency, the vast majority of situations in which an official capacity claim is proper is where the plaintiff seeks prospective injunctive relief to force the agency to do or cease doing something. *See Hafer v. Melo*, 502 U.S. 21, 25–27 (1991). With respect to Mr. Parker's claim that he was unlawfully subjected to cruel and unusual punishment, this is exactly the type of

relief that Mr. Parker seeks—an order requiring CCF to provide him with outdoor exercise time. Thus, a claim against the Colorado Department of Corrections has been alleged;[14] the remedy is limited to injunctive relief. For all future filings, the CDOC shall be substituted as the proper defendant with respect to this claim.

The only other remaining claims are for failure to protect at AVCF (against Director Zavaras, Warden Arellano, Mr. Hollenbeck, and Captain Hall) and for retaliation at CCF (against Lieutenant McCormick, Ms. Webster, and Lieutenant Piper). These claims are against individual officers for discrete, past actions. No injunctive relief is available for these claims.

Accordingly, Mr. Parker's only viable official capacity claim is his cruel and unusual punishment claim against the CDOC.

G.    Physical Injury

Under 42 U.S.C. § 1997e(e) of the Prison Litigation Reform Act, a prisoner cannot maintain a civil action for mental or emotional injury suffered while in custody without a prior showing of physical injury. This provision is generally construed as a limitation on the relief that a prisoner can obtain for injuries suffered while in custody, rather than a jurisdictional bar. *See Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 807 (10th Cir. 1999). This requirement is applied to each claim, independently. *See Turner v. Schultz*, 130 F.Supp.2d 1216, 1223 (D. Colo. 2001); *Marrie v. Nickels*, 70 F.Supp.2d 1252, 1264 (D. Kan. 1999). Moreover, the provision applies regardless of the nature of the underlying substantive violation asserted. *See Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001) (applying the provision to a First Amendment claim for free exercise of religion). Thus, although emotional and emotional

---

[14]  As noted *supra*, Mr. Parker has not alleged personal participation of any Defendant sufficient to subject them to individual liability on the cruel and unusual punishment claim. Thus, the only cruel and unusual punishment claim is against the Defendants in their official capacities.

injuries are sufficient under section 1983, prisoners may not receive compensatory damages under 1983 unless they have also suffered a physical injury in conjunction with each claim.  *See id.* at 881; *Perkins*, 165 F.3d at 808.

In this case, Mr. Parker has alleged is that he was physically assaulted in his cell at AVCF.  He has not, however, provided any further information regarding the physical effect of the assault.  *See Clifton v. Eubank*, 418 F.Supp.2d 1243, 1245–46 (D. Colo. 2006) (noting that although the PLRA does not define "physical injury", appeals courts have concluded that an injury must be more than de minimus but need not be significant).  Nevertheless, liberally construing Mr. Parker's allegations, the Court concludes that it is likely that the physical assault resulted in a physical injury sufficient to satisfy section 1997e(e).  Accordingly, the Court deems Mr. Parker to have alleged a physical injury sufficient to survive a motion to dismiss. To prevail at the trial or summary judgment stage, however, Mr. Parker must present evidence of the physical injuries he suffered as a result of the assault at AVCF.

As to Mr. Parker's claim for retaliation against Ms. Webster, Lieutenant McCormick, and Lieutenant Piper, and his claim against the CDOC for cruel and unusual punishment, however, he has not alleged a physical injury associated with the alleged violations.  Indeed, Mr. Parker does not allege any injury resulting from the retaliation, only emotional and mental injuries as a result of the deprivation of outside exercise.  He is barred from receiving compensatory damages on these claims; his remedy is limited to an injuction.

**IT IS THEREFORE ORDERED** that:

(1)     Mr. Parker's Motion to Strike the Defendants Motion to Dismiss and Grant Relief (**#217**) is construed as a response and **DENIED** insofar as it seeks any additional relief.

(2)     Mr. Parker's Motion to Dismiss the Defendants Motion to Dismiss **(#238)** is

**DENIED**.

(3)     The Defendants' Motion to Dismiss **(#201)** is **GRANTED IN PART** and

**DENIED IN PART**.

(4)     The following claims are **BARRED BY QUALIFIED IMMUNITY** and

**DISMISSED** for failure to state a claim: Mr. Parker's claim for due process and

Eighth Amendment violations for placement in administrative segregation against

Lieutenant Steinbeck, Mr. Vigil, and Lieutenant Piper; Mr. Parker's claim under

the Fourteenth Amendment for his placement at CCF against Mr. Hollenbeck; Mr.

Parker's claims for failure to protect at LCF, BVCF, and CCF against Mr.

Hollenbeck, Mr. Vigil, Lieutenant Piper, and Lieutenant McCormick; and Mr.

Parker's claim for denial of medical care against Dr. Michaud, Ms. Jones, and

Ms. Hoggarth.

(3)     The only remaining claims are for failure to protect at the Arkansas Valley

Correctional Facility against Director Zavaras, Warden Arellano, Mr. Hollenbeck,

and Captain Hall; an Eighth Amendment cruel and unusual punishment claim

against the CDOC; and a claim for retaliation against Lieutenant McCormick, Ms.

Webster, and Lieutenant Piper.  Mr. Parker is, however, limited to injunctive

relief on his Eighth Amendment claim.

(5)     As there are no claims pending against Defendants Ritter, Broadus, Zupan,

Enriquiz, Vigil, Jones, Hoggarth, Michaud, and Steinbeck, these defendants's

names shall be removed from the caption of all subsequent filings.

(6)     As Mr. Parker's Eighth Amendment claim is asserted against the Colorado

Department of Corrections, it shall be added to the caption of all subsequent

filings as a defendant.

Dated this 25th day of March, 2010

**BY THE COURT:**

Marcia S. Krieger
United States District Judge