IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00737-MSK-KLM

KEITH PARKER,

    Plaintiff,

v.

ARISTEDES W. ZAVARAS,
PAUL HOLLENBECK
MR. ARELLANO,
CAPTAIN HALL,
DONNA WEBSTER
M. MCCORMICK,
LT. PIPER, and
COLORADO DEPARTMENT OF CORRECTIONS,

    Defendants.
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on Plaintiff's **Motion [sic] Preliminary Injunction/Injunctive Relief** [Docket No. 256; Filed October 13, 2009] (the "Motion"). Defendants responded to the Motion [Docket No. 277; Filed November 6, 2009] and Plaintiff replied [Docket No. 297; Filed November 25, 2009]. A hearing was held on the Motion on March 1, 2010 and continued on March 23, 2010. Also before the Court is Plaintiff's **Motion Brief [sic] - Injunctive Relief** [Docket No. 384; Filed March 29, 2010] ("Supplemental Brief"). In this filing, Plaintiff reiterates and expands on arguments made in the Motion and at the hearings, and the Court construes it as a Supplemental Brief. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion be **DENIED**.

**I.      Procedural Background**

Plaintiff, who is proceeding in this matter *pro se*, presently is incarcerated at Colorado State Penitentiary ("CSP").  In the instant Motion, Plaintiff seeks an injunction directing the Colorado Department of Corrections ("CDOC") to provide him with outdoor exercise immediately.  Plaintiff contends that CDOC's failure to provide him with outdoor exercise violates the Eighth Amendment to the United States Constitution.

Defendants filed a Motion to Dismiss Plaintiff's Complaint [Docket No. 201], which the Court granted in part and denied in part [Docket No. 379].  The Court, construing Plaintiff's Complaint liberally, found that Plaintiff asserted six claims.[1]  The Court ultimately concluded that Plaintiff had stated three claims successfully: a claim against Defendants Zavaras, Arellano, Hollenbeck, and Hall for failure to protect him at the Arkansas Valley Correctional Facility; an Eighth Amendment cruel and unusual punishment claim against CDOC based in part on failure to provide outdoor exercise; and a claim for retaliation against Defendants McCormick, Webster, and Piper.  *See Order* [#379] at 23.  The Court noted that Plaintiff is limited to injunctive relief on his Eighth Amendment claim.  *Id.*

At issue in the instant Motion are Plaintiff's allegations that confinement to his cell

---

[1]   The Court described the claims as follows:
(1)    a substantive and/or procedural due process claim against Lieutenant Steinbeck, Mr. Vigil, and Lieutenant Piper for placement in administrative segregation;
(2)    an Eighth Amendment claim for placement at [Centennial Correctional Facility ("CCF")] against Mr. Hollenbeck;
(3)    an Eighth Amendment claim against Warden Jones for the conditions of his confinement at CCF;
(4)    an Eighth Amendment claim against Director Zavaras, Warden Arellano, Mr. Hollenbeck, Captain Hall, Mr. Vigil, Lieutenant Piper, and Lieutenant McCormick for failure to protect;
(5)    an Eighth Amendment claim against Dr. Michaud, Ms. Jones, and Ms. Hoggarth for failure to provide medical treatment;
(6)    and a retaliation claim for filing this lawsuit and/or filing prison grievances against Lieutenant McCormick, Ms. Webster, and Lieutenant Piper.
*Order* [#379] at 6-7.

for twenty-three hours per day and denial of outdoor exercise constitute cruel and unusual punishment in violation of the Eighth Amendment. Plaintiff alleges that he suffers irreparable harm from this deprivation of outdoor exercise. He further contends that the lack of outdoor exercise has caused deterioration of both his physical and his mental health.

**II.      Findings of Fact**

The following facts relevant to this Motion were established at the hearing. Plaintiff has been incarcerated at CSP since July of 2009.[2] CSP is an administrative-segregation facility, meaning that it is comprised entirely of administrative-segregation units. Centennial Correctional Facility ("CCF") is across the street from CSP. Inmates at CSP and CCF are classified according to quality of life levels ("Quality Levels") one through six, with Quality Level One being the most restrictive and Quality Level Six being the least restrictive. *See* Operational Memorandum, Centennial Correctional Facility/Colorado State Penitentiary, Offender Group Living: Conditions of Confinement and Quality of Life, Defendants' Exhibit A ("Operational Memorandum"). CSP houses those inmates classified at Quality Levels One, Two, or Three. CSP has no outdoor exercise facilities. As designed and built, CSP was not intended to include outdoor exercise facilities, as its purpose is to house inmates requiring a high level of security who are classified in the lower Quality Levels. Upon classification at Quality Level Four, inmates are transferred to CCF. While in CCF at

---

[2] Plaintiff testified at the hearing that he had been held in administrative segregation since November of 2008. *See also* Motion [#256] ¶ 3 (stating Plaintiff had been without outdoor exercise for "over a year"); *Supplemental Brief* [#384] ¶ 6 (stating Plaintiff was assigned to administrative segregation on November 24, 2008). However, Plaintiff also testified that he was assigned to CSP, where all inmates are held in administrative segregation, in July of 2009. The length of time that Plaintiff has been without outdoor exercise is therefore not clear from the record. However, the Court's analysis of whether Plaintiff has made the necessary showing for a preliminary injunction is unaffected.

3

Quality Level Four, inmates are allowed outdoor exercise. At CCF, an inmate exercises out-of-doors in an area immediately outside of his cell.

Each Quality Level classification carries with it various privileges. In general terms, these privileges relate to the prisoner's ability to possess property, such as books, the amount of money that he may spend at the prison canteen, the frequency and duration of his telephone calls and visits, opportunities for job assignments, and recreational opportunities. *See Operational Memorandum* § IV(F). Plaintiff presently is classified at Quality Level Three. Generally speaking, inmates progress from one Quality Level to the next by cooperating with prison officials, not committing any disciplinary infractions, and completing programs.[3]

At the time of the hearing on this Motion, Plaintiff has been without outdoor exercise

---

[3] Privileges at Quality Level Three and requirements for progression to Quality Level Four are described as follows:
    a.    Privileges:
        1)    Purchase canteen items totaling $25.00 per week.
        2)    Four 3-hour non-contact visits per month.
        3)    Four telephone sessions per month, not to exceed 20 minutes each.
        4)    One 12" or 13" television set for program delivery and recreational interest.
        5)    Opportunity for day hall porter or barber jobs.
        6)    Custodians/Barbers are permitted to have two additional phone sessions. These calls will only be allowed after every other offender's authorized and requested calls have been made.
    b.    Level Increase:
        1)    The case manager will submit the offender for review to the classification committee when the offender has:
            a)    Not been convicted of any Class I COPD violation in the past 6-12 months.
            b)    Not been convicted of any Class II COPD violation in the past 3-6 months.
            c)    Has successfully completed recommended programs determined by the case manager or required by the classification committee.
            d)    Maintained Level Three status for a minimum of three consecutive months.
            e)    Upon approval for and placement in the PRO Program, offenders will be re-classified to close custody.
*Operational Memorandum* § IV(F)(3).

at least since July of 2009.  *See supra* note 2.  As part of Plaintiff's current conditions of confinement at CSP, five times per week he is permitted one hour of out-of-cell exercise in the "exercise room."  The exercise room is approximately twenty square feet larger than inmates' cells.[4]  It has a pull-up bar at one end and a window, covered with a metal grate or bars, which provides the room with fresh air and indirect sunlight.  The classification of an inmate at Quality Levels One and Two is reviewed every seven days; at Quality Level Three, classification levels are reviewed every ninety days.[5]

During his confinement in administrative segregation, Plaintiff has had access to programs.  He has either completed or is in the process of completing several, including programs in anger management, prison life skills, relapse prevention, and personal awareness.  He also has had access to medical treatment.

### III.     Standard for Preliminary Injunctive Relief

---

[4] Inmates cells have "no less than eighty (80) square feet of floor space and 35 square feet of unencumbered space furnished with a toilet, wash basin with hot/cold water, desk, stool, and bunk with a fire retardant, sanitizable mattress." *Operational Memorandum* § IV(A)(1).

[5] Plaintiff contends that this review process is nothing more than a "sham review," with individual prison officials and guards granted too much discretion, which he alleges they abuse.  He maintains that he will never progress and be transferred out of CSP and therefore will serve the entirety of his prison sentence without any outdoor exercise.  His sentence is twelve years.  However, the constitutionality of the classification review procedure is not presently before the Court in the instant Motion.  Furthermore, as noted above, the Court has dismissed Plaintiff's due process claims related to the classification review process.  To the extent that Plaintiff sought injunctive relief related to that claim, the request should be denied as the claim has been dismissed.  Because the purpose of a preliminary injunction is to preserve the status quo and prevent irreparable harm pending resolution of the lawsuit, "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose v. Herrington*, 42 F.3d 470, 471 (1994) (per curiam) (citing *Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975)) (affirming district court's denial of plaintiff's motion for preliminary injunction where motion sought injunction related to alleged retaliatory actions and underlying lawsuit brought only Eighth Amendment claim for inadequate medical treatment).  Claims not presently before the Court in this lawsuit cannot be the basis for a preliminary injunction.  *Id.* (citing *Stewart v. United States I.N.S.*, 762 F.2d 193, 198-99 (2d Cir. 1985)).

As a preliminary matter, because Plaintiff is proceeding *pro se*, the Court must construe his pleadings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).

Injunctive relief is an extraordinary remedy that should only be granted when the moving party clearly and unequivocally demonstrates its necessity. *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). In the Tenth Circuit, a party requesting injunctive relief must clearly establish that: (1) the party will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits. *Id*.

It is well established that "[b]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (citations omitted). Moreover,

> [b]ecause the limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held, we have identified the following three types of specifically disfavored preliminary injunctions . . . (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that [he] could recover at the conclusion of a full trial on the merits.

*Schrier*, 427 F.3d at 1258-59 (citations omitted). These disfavored injunctions are "more

6

closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* at 1259.

Plaintiff seeks a preliminary injunction which would require Defendants to act and/or otherwise alter the status quo by allowing him outdoor exercise, either by moving him to another facility or creating an outdoor exercise facility at CSP. The only available legal remedy in connection with Plaintiff's Eighth Amendment outdoor exercise claim is an injunction, and therefore the relief sought would afford Plaintiff all the relief that he could recover from a trial on the merits as to this claim. *See Hafer v. Melo*, 502 U.S. 21, 25-27 (1991); *Kentucky v. Graham*, 473 U.S. 159, 168-70 (1985). For these reasons, the injunctive relief sought by Plaintiff "constitutes a specifically disfavored injunction" that "must be more closely scrutinized." *Schrier*, 427 F.3d at 1259, 1261. Therefore, "the right to relief must be clear and unequivocal." *Id.* at 1258.

Additionally, I must consider well-established law that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215 (1976). Courts should grant injunctive relief involving the management of prisons only under exceptional and compelling circumstances. *Taylor v. Freeman*, 34 F.3d 266, 269-70 & n.2 (4th Cir. 1994); *see also Citizens Concerned for Separation of Church & State v. Denver*, 628 F.2d 1289, 1299 (10th Cir. 1980). Indeed, the Tenth Circuit has stated that it "abhor[s] any situation or circumstance requiring the intervention of the federal courts in matters involving the administration, control and maintenance by the sovereign states of their penal systems. It is a delicate role assigned to the federal courts to display that restraint so necessary 'in the maintenance of proper federal-state relations.'" *Battle v. Anderson*, 564 F.2d 388, 392

(10th Cir. 1977) (citation omitted).  Accordingly, "intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts. . . . [This] is especially true where mandatory injunctive relief is sought and only preliminary findings as to the plaintiff's likelihood of success on the merits have been made." *Taylor*, 34 F.3d at 269 (citations omitted).

**IV.     Analysis**

**A.     Irreparable Injury**

To obtain injunctive relief, Plaintiff must first show that he will suffer irreparable injury if his request for injunctive relief is denied.  *Schrier*, 427 F.3d at 1258.  "To constitute irreparable harm, an injury must be certain, great, actual 'and not theoretical.'" *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).  Irreparable harm is more than "merely serious or substantial" harm.  *Id.* (citation omitted).  The party seeking the preliminary injunction "must show that 'the injury complained of is of such *imminence* that there is a clear and present need for equitable relief' to prevent irreparable harm."  *Id.* (citation omitted).  Therefore, to demonstrate irreparable harm, Plaintiff "must establish both that harm will occur, and that, when it does, such harm will be irreparable."  *Vega v. Wiley*, 259 Fed. App'x 104, 106 (10th Cir. 2007).  Finally, an injunction is only appropriate "to prevent existing or presently threatened injuries.  One will not be granted against something merely feared as liable to occur at some indefinite time in the future."  *Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931).

Plaintiff has failed to adequately show that he is facing immediate and irreparable

8

harm. Plaintiff testified that due to the lack of outdoor exercise, he has been deprived of Vitamin D and has asthma, acid reflux, a calcium deficiency, and muscular atrophy. He also testified that his mental functions are "deteriorating" in that when he has a bad day, not being able to go outside makes his day worse, and that he feels like he is losing his "grip on reality."

Joan Shoemaker, a registered nurse and CDOC's Director of Clinical Services and Health Authority, testified that sufficient sources of Vitamin D and calcium exist in the food provided to Plaintiff by CDOC. She further testified that Plaintiff has ample opportunity for sufficient exercise to maintain overall health, both from activity in the exercise room and from daily activities in his cell. She noted that according to a health record from August of 2009, Plaintiff has not been diagnosed with asthma, a Vitamin D deficiency or a calcium deficiency. *See* Defendants' Exhibit B. She further testified that lack of outdoor exercise could not cause muscular atrophy or other adverse effects as described by Plaintiff.

Plaintiff was permitted to submit additional exhibits after the hearing. The Court has reviewed the additional exhibits. None of these exhibits establish that absent a preliminary injunction, Plaintiff will suffer irreparable harm. The CDOC Program Assessment Summary pertaining to Plaintiff, dated August 19, 2009, shows that he has "severe" substance abuse treatment needs and moderate mental health needs. *See* Plaintiff's Exhibit B, Docket No. 385. However, Plaintiff has provided no competent evidence, aside from his own self-serving and conclusory statements, that the lack of outdoor exercise negatively impacts his mental health or substance abuse treatment needs. Plaintiff also submitted additional medical records. His ambulatory health records do not show that he has been diagnosed with a Vitamin D deficiency, calcium deficiency, or asthma. *See* Exhibit D [#385] (records

9

from October 2008, February 2009).

While Plaintiff's testimony and his exhibits tend to suggest that Plaintiff suffers from acid reflux, there is no evidence which demonstrates that this condition is a result of lack of outdoor exercise. *See id.*; Exhibits G & H [#385]. The quality of treatment Plaintiff is receiving for his substance abuse, mental health needs, or other medical needs while in administrative segregation is entirely outside the scope of the instant Motion. His fears that long-term deprivation of outdoor exercise will cause harm to his health are conjectural at best and do not provide a basis for the relief he seeks. *See Connecticut*, 282 U.S. at 674 (noting that injunctive relief will not lie where alleged injury is merely feared to occur at some time in the future). Plaintiff has failed to establish any harm to his health due to lack of outdoor exercise.[6]

As I find that Plaintiff has made no showing of injury due to lack of outdoor exercise, much less that such an injury is "great" or "actual" and "more than merely serious or substantial," injunctive relief is subject to denial on this basis alone. *See Sampson v. Murray*, 415 U.S. 61, 91-92 (1974) (inferring that the failure to show irreparable injury is sufficient ground, by itself, to deny injunctive relief). In the interest of completeness, the Court also briefly addresses the remaining factors applicable to determine whether a

---

[6] Plaintiff had the opportunity to provide testimony from rebuttal witnesses as to the effect of the lack of outdoor exercise on his health. Plaintiff requested that the Court issue a subpoena to Ms. Martha Rudolph, Executive Director of the Colorado Department of Health and Environment [Docket No. 358], and the Court issued the subpoena [Docket No. 361]. Ms. Rudolph moved to quash the subpoena [Docket No. 366], and a hearing was held on that motion [Docket No. 375]. At that hearing, the Court found that Ms. Rudolph had no knowledge of Plaintiff nor general medical knowledge as to the effects on health of lack of outdoor exercise and granted Ms. Rudolph's motion. *See* Docket No. 375. Additional witnesses offered by Plaintiff, Vincent Romero and Sky Howell, lacked knowledge of Plaintiff and his medical needs and knowledge of the alleged effects of lack of outdoor exercise on mental health and substance abuse problems. Accordingly, they were unable to offer useful testimony relating to Plaintiff's claim.

preliminary injunction should enter.

**B.     Balance of Harm and Public Harm**

Even if Plaintiff could demonstrate some injury, he must demonstrate that "the threatened injury . . . outweighs whatever damage the proposed injunction may cause the opposing party" and that "the injunction, if issued, would not be adverse to the public interest." *Schrier*, 427 F.3d at 1258.  Plaintiff does not address the balance of harm in his Motion or Supplemental Brief, nor did he address it at the hearing.

Dennis Burbank, Administrative Services Manager for CSP and CCF, testified that providing outdoor exercise to the inmates housed at CSP, including Plaintiff, would be dangerous.  He testified that when CSP inmates are outside of their cells, they are placed in restraints and escorted by two guards (per inmate) at all times.  He described the more than 750 inmates at CSP as the "most dangerous, violent, predatory, and incorrigible" of the approximately 22,000 inmates in the CDOC system.  He further explained that the absence of outdoor exercise for those inmates classified at Quality Levels One, Two, and Three is part of CDOC's behavior management incentive program, designed to motivate the inmates to cooperate, behave, and progress to a higher level, where outdoor exercise is permitted.  As noted above, the Court's interference with Defendants' day-to-day decisions regarding how to manage this Plaintiff, particularly to the extent that Plaintiff's requested relief would deviate from Defendants' methods of managing all other inmates, would significantly undermine the discretion of CDOC officials and the autonomy of the state prison system.  *See Taylor*, 34 F.3d at 269-70.  Accordingly, the Court finds that Plaintiff has failed to make the requisite showing that the threatened injury to him outweighs the burden to the opposing party.

Next, I note that Plaintiff fails to address the impact of an injunction on the public. The Court notes that the public would ultimately have to bear the cost of any required changes in his exercise program.  While in this isolated case such cost may be minimal, the Court finds that the public interest is best served by upholding the bright-line rule that Court interference is limited to only those extreme cases where irreparable injury is clear. The Court's monitoring of and control over Defendants' day-to-day treatment of Plaintiff and general assignment of classifications and privileges would be adverse to the public interest, and the Court finds that Plaintiff has failed to meet his burden in relation to this factor.  *See Teague v. Hood*, No. 06-cv-01800-LTB-CBS, 2008 WL 2228905, at *17 (noting that the public is adversely impacted by the court monitoring day-to-day prison condition matters).

**C.     Substantial Likelihood of Success on the Merits**

Finally, Plaintiff must show that he has a substantial likelihood of success on the merits of the claim underlying his request for an injunction. *Schrier*, 427 F.3d at 1258.  As noted earlier, here the underlying claim is Plaintiff's Eighth Amendment claim for cruel and unusual punishment regarding his lack of access to outdoor exercise.

Plaintiff argues that he is entitled to a preliminary injunction because his claim is similar to the claim made in *Fogle v. Pierson*, 435 F.3d 1252 (10th Cir. 2006).  First of all, the Court notes that at issue in *Fogle* was whether the Plaintiff had stated an Eighth Amendment claim sufficient to survive defendant's motion to dismiss pursuant to Rule 12(b)(6).  435 F.3d at 1259-60.  The district court had dismissed plaintiff's Eighth Amendment claim because he had alleged denial of outdoor exercise but not denial of all exercise. *Id.* at 1260.  The *Fogle* court determined that the district court had erred because alleging denial of outdoor exercise could, as a matter of law, be sufficient to state a claim.

*Id.* (citing *Bailey v. Shillinger*, 828 F.2d 651, 653 (10th Cir. 1987)).  Here, the Court has already determined that Plaintiff has stated a claim under the Eighth Amendment.  *See Order* [#379].  The determination of whether a plaintiff has successfully stated a claim is far different from the question presently before this Court, which is whether Plaintiff has shown a substantial likelihood of success on the merits of his Eighth Amendment claim.

      Plaintiff is correct that in *Fogle*, the Tenth Circuit noted that "some form of regular outdoor exercise is extremely important to the psychological and physical well being of inmates, and some courts have held a denial of fresh air and exercise to be cruel and unusual punishment *under certain circumstances.*"  *Fogle*, 435 F.3d at 1260 (quotation omitted)(emphasis added).  However, the circumstances of each case are important.  The Tenth Circuit has also noted, in multiple cases, that the denial of outdoor exercise is not a *per se* Eighth Amendment violation.  *See id.*; *Bailey*, 828 F.2d at 653 (finding that no court has ruled "that . . . a denial [of outdoor exercise] is *per se* an Eighth Amendment violation"); *see also Ajaj v. United States*, 293 Fed. App'x 575 (10th Cir. 2008) (noting no *per se* Eighth Amendment violation for failure to provide outdoor exercise and finding no violation under the circumstances presented where plaintiff indefinitely confined in administrative segregation and had no outdoor exercise for one year).  Plaintiff also cites several cases from the Ninth Circuit; in these cases as well, the courts have emphasized that the totality of the circumstances experienced by the plaintiff-inmates determines whether the lack of outdoor exercise violates the Eighth Amendment.  *Toussaint v. Roushen*, 553 F.Supp. 1365 (D.C. Cal. 1983), *aff'd in part, rev'd in part sub nom. Toussaint v. Yockey*, 722 F.2d 1490 (9th Cir. 1984) (granting preliminary injunction and requiring, among other things, outdoor exercise, where conditions were "gruesome" and included that inmates were double-celled

in administrative segregation units approximately 6 feet by 8 feet, cells had inadequate heat and ventilation, plumbing was inadequate, and cells plagued by rodents, insects, and excrement); *Spain v. Procunier*, 600 F.2d 189, 199-200 (9th Cir. 1979) (noting that "several factors combined to make outdoor exercise a necessity," including no out-of-cell exercise, lack of opportunity to participate in programs, atmosphere of fear and apprehension, and four years of administrative segregation).[7]

Undisputed evidence presented at the hearing established that Plaintiff's cell is adequately ventilated, he is allowed at least five hours of exercise in the exercise room per week, and he is able to participate in programs. Under the circumstances of Plaintiff's case, the Court concludes that Plaintiff has not shown a substantial likelihood of success on the merits of his Eighth Amendment claim. The merits of that claim remain to be resolved at a later point in this proceedings.

**V.     Conclusion**

Accordingly, I respectfully **RECOMMEND** that the Motion be **DENIED.**

IT IS FURTHER **ORDERED** that pursuant to Fed.R.Civ.P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed.R.Civ.P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal

---

[7] Plaintiff frequently cites *Keenan v. Hall*, 83 F.3d 1083 (9th Cir. 1996). In *Keenan*, the Court concluded that plaintiff had provided sufficient evidence to oppose defendant's motion for summary judgment and proceed to trial on his Eighth Amendment claim premised on lack of outdoor exercise. 83 F.3d at 1089. The limited analysis in *Keenan* is entirely unpersuasive as to the question presently before the Court.

questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).


Dated:  April 7, 2010

                                                                  BY THE COURT:
                                                                   s/ Kristen L. Mix
                                                                   U.S. Magistrate Judge