IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-00737-MSK-KLM

MR. KEITH PARKER,

        Plaintiff,

v.

ARISTEDES W. ZAVARAS,
PAUL HOLLENBECK,
MR. ARELLANO,
CAPTAIN  HALL,
DONNA WEBSTER,
M. MCCORMICK, and
LT. PIPER,

        Defendants.

---

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO AMEND,
MOTION FOR RECONSIDERATION, MOTIONS FOR ADDITIONAL DISCOVERY,
MOTIONS FOR INJUNCTIVE RELIEF;
GRANTING PLAINTIFF'S MOTIONS FOR CONSIDERATION OF UNTIMELY
FILED EXHIBITS AND MOTION FOR UPDATE ON CASE;
GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND
DENYING AS MOOT PLAINTIFF'S MOTIONS FOR RULINGS**

---

**THIS MATTER** comes before the Court on the Defendants' Motion for Summary

Judgment **(#401)**, to which the Plaintiff Keith Parker responded **(#404)**,[1] the Defendants replied

---

[1] Mr. Parker titled his response a "Motion to Dismiss Defendants [sic] Motion for Summary Judgment Due to the Fact Genuine Issue's [sic] of Material Fact Exist and Grant Relief Under Rule 38, 40." However, as the document was clearly filed in response to the Defendants' Motion for Summary Judgment and addresses the arguments made in the Motion for Summary Judgment, the Court generally construes this document as a response. To the extent that Mr. Parker seeks reconsideration of the Court's previous Order **(#379)** on the Defendants' Motion to Dismiss, the Court addresses the arguments *infra*, but denies the motion. To the extent that Mr. Parker seeks any additional relief, the motion is denied.

(#422),[2] and Mr. Parker filed a Surreply (#439).[3]  In connection with the pending Motion for Summary Judgment, there are a number of other pending motions.  First, Mr. Parker's Motion for Review (#443), to which the Defendants responded (#449), addresses claims Mr. Parker believes were inappropriately omitted from the Amended Complaint (#191) by prior volunteer counsel.  The Court construes this as a motion to amend the complaint to assert these claims.

Second, Mr. Parker has filed three motions seeking to submit additional exhibits for the Court's consideration in connection with the Defendants' Motion for Summary Judgment: (1) "Affidavit to Invoke Personal Knowledge of Claims" (#412), to which no response was filed; (2) Motion to Include Exhibits in Motion for Summary Judgment (#416), to which the Defendants responded (#423); and (3) Motion to Include Another Exhibit with the Summary Judgment Motion (#429), to which the Defendants responded (#437).

Third, Mr. Parker has requested additional discovery prior to consideration of the Motion for Summary Judgment regarding his "Institutional File," and a recording of an administrative segregation hearing: (1) Request for *In Camera* Inspection of his Institutional File (#411), to which no response was filed; (2) Motion for Hearing or Conference (#428) regarding discovery of his institutional file, to which the Defendants responded (#437); (3) Rule 56(f) Motion (#440)

---

[2]  The Defendants filed this document as a response to Mr. Parker's Motion to Dismiss their Summary Judgment Motion (#404), which the Court has construed as a response to the Motion for Summary Judgment.  *See supra*, note 1.  Given the Court's construction of Mr. Parker's "motion," the Defendants' "response" thereto is deemed a Reply.  Notably, however, it appears to be merely a copy of the Motion for Summary Judgment itself.

[3]  Mr. Parker filed this document as a "Motion," (and the Defendants responded (#447) treating it as such), but the document merely provides additional argument regarding claims for which the Defendants' seek summary judgment (#401).  Accordingly, it is deemed a surreply.  To the extent the "motion" seeks any additional relief, including a temporary restraining order, the motion (#439) is **DENIED** (Mr. Parker's other motions for a temporary restraining order are addressed *infra*).

for additional discovery on his Institutional File, to which the Defendants responded (**#448**); and (4) Motion for *In Camera* Review (**#441**)[4] of Mr. Parker's Institutional File and a recording of the administrative segregation hearing, to which no response was filed.

Fourth, Mr. Parker has filed three motions for injunctive relief: (1) Motion for Temporary Restraining Order (**#433**), to which the Defendants responded (**#445**); (2) Motion for Injunctive Relief (**#435**), to which the Defendants responded (**#444**);[5] and (3) Motion for Temporary Restraining Order, Preliminary Injunction (**#462**), to which a response is not yet due.

Finally, with respect to the status and progress of his case, Mr. Parker has filed four motions: (1) Motion for a Hearing or Conference on the Case and Pending Motions (**#451**), to which the Defendants' responded (**#455**); (2) Motion for Update on Case (**#456**), to which Defendants responded (**#458**); (3) Motion for Ruling (**#457**), to which the Defendants responded (**#458**); and (4) Motion for Ruling (**#463**), to which no response is yet due.

Having considered the same,[6] the Court **FINDS** and **CONCLUDES** the following.

_____

[4]  This motion is titled "Objection to The Defendants' Second Motion for Enlargement of Time and Motion for Judgment on the Pleadings," but requests that the Court order the Defendants to produce his Institutional File for *in camera* review and to provide the Court a copy of the recording of the administrative segregation hearing.

[5]  The Defendants note that this motion includes copied pages of a previous motion for injunctive relief (**#184**) and, therefore, could be construed as an objection, appeal, or resubmission of that motion.  To the extent that this is the case, the previous motion (**#184**) was ruled on (**#318**) over a year ago and, therefore, an appeal or objection as to this ruling is not appropriate.  *See* Fed. R. Civ. P. 72(a).  Liberally construing Mr. Parker's pleadings, however, the Court considers the motion as if filed anew, simply re-utilizing prior legal argument.

[6]  In construing Mr. Parker's pleadings, the Court is mindful that he is proceeding *pro se* and, therefore, the Court construes his pleadings liberally and holds him to a "less stringent standard" than pleadings drafted by lawyers in accordance with *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Such liberal construction is intended merely to overlook technical formatting errors, poor writing style, and other defects in the party's use of legal terminology, citation, and theories.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  The Court, however, cannot act as a *pro se* litigant's legal advocate, and a *pro se* plaintiff retains the burden to allege

## I. Jurisdiction

This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## II. Issues Presented

As discussed *infra*, this action grows out of Mr. Parker's confinement with the Colorado Department of Corrections ("CDOC"). Mr. Parker's three remaining claims are (1) an Eighth Amendment failure to protect claim based upon alleged inaction by Director Zavaras, Warden Arellano, Mr. Hollenback, and Captain Hall during Mr. Parker's confinement at the Arkansas Valley Correction Facility ("AVCF"); (2) an Eighth Amendment conditions of confinement claim against the Colorado Department of Corrections ("CDOC") based upon alleged lack of outdoor exercise during Mr. Parker's confinement at the Centennial Correctional Facility ("CCF"); and (3) a retaliation claim against Lieutenant McCormick, Ms. Webster, and Lieutenant Piper for actions allegedly taken against Mr. Parker based on his filing of this lawsuit.

In the Motion for Summary Judgment (**#401**), the Defendants seek summary judgment as to all three of the remaining claims. As to the failure to protect claim, the Defendants assert that Mr. Parker has failed to demonstrate personal participation as to any of the pertinent defendants; that all pertinent defendants are entitled to qualified immunity; and that Mr. Parker is unable to demonstrate a *prima facie* case for failure to protect. As to the outdoor exercise claim, the Defendants argue that Mr. Parker cannot establish his *prima facie* case for an Eighth Amendment violation. As to the retaliation claim, the Defendants argue that Mr. Parker is not entitled to any

---

sufficient facts to state a viable claim. Furthermore, *pro se* status does not relieve a party of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court must apply the same standard to counsel licensed to practice law and to a *pro se* party. *See McNeil v. United States*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

relief and that he has not presented any evidence demonstrating a retaliatory motive, as he is required to do to demonstrate a *prima facie* case.

### III.   Preliminary Issues

The Court first addresses some of the preliminary issues that are raised in Mr. Parker's pending motions, identified *supra*.

### A.   Motion to Amend

Mr. Parker's Motion for Review (**#443**) primarily complains about the representation provided by volunteer counsel, who withdrew shortly after filing the Amended Complaint (**#191**). Mr. Parker complains that counsel omitted certain claims in the Amended Complaint. Liberally construing this motion, the Court understands Mr. Parker to request that he be allowed to file another complaint in order to assert these claims. To the extent that it seeks any other relief, including action against volunteer counsel for the representation provided, it is **DENIED**.

Mr. Parker maintains that volunteer counsel failed to include three claims: (i) an equal protection claim against Captain Hall; (ii) a racial discrimination claim against Lieutenant Piper for calling Mr. Parker a "nigger"; and (iii) a claim for violation of disciplinary procedures based on Mr. Parker's placement in administrative segregation in June 2008 for longer than allowed under prison guidelines. However, he does not contend that there was any omission in the factual allegations in the Amended Complaint.

Assuming that Mr. Parker's volunteer counsel overlooked these claims in preparing the Amended Complaint (**#191**), they have not escaped the Court's review and consideration. Indeed, Mr. Parker raised these same issues in his response (**#227**) to the Motion to Dismiss (**#201**) the Amended Complaint. In ruling on this motion (**#379**), the Court recognized that Mr. Parker's counsel had withdrawn and that he believed that more claims were shown in the

Amended Complaint than those specifically denominated.  As a consequence, the Court gave

deference to the Amended Complaint as if it had been prepared by Mr. Parker.  It treated all facts

alleged in the Amended Complaint as true and gave broad deference as to the scope of the legal

claims that might be asserted.  The Court considered the claims that Mr. Parker now seeks to

advance, finding (probably as did Mr. Parker's volunteer counsel) that the alleged facts were

insufficient to support them.[7]  Mr. Parker does not direct the Court to any allegation in the

Amended Complaint which would remedy the deficiency, nor offers additional facts that would

remedy the deficiency.  Accordingly, the Motion for Review **(#443)**, construed as a motion to

amend, is **DENIED,** as futile.

### B.    Motion for Reconsideration

Although the Court generally construes Mr. Parker's "Motion to Dismiss Defendants

[sic] Motion for Summary Judgment Due to the Fact Genuine Issue's [sic] of Material Fact Exist

and Grant Relief Under Rule 38, 40" **(#404)** as a response to the Defendants' Motion for

Summary Judgment, certain statements appear to request reconsideration of the Court's March

2010 Opinion and Order Granting in Part Motion to Dismiss **(#379)**.

In considering these, the Court is mindful that although the Federal Rules of Civil

Procedure do not recognize a "motion to reconsider," a litigant has two options when subject to

---

[7]  Based upon the facts alleged, the Court found that Mr. Parker could assert a procedural
due process and substantive due process claim for his placement in administrative segregation in
June 2008 for longer than the period prescribed by prison guidelines, but found that Lieutenant
Steinbeck, Mr. Vigil, and Lieutenant Piper were entitled to qualified immunity on this claim.
*See* March 25, 2010 Opinion and Order Granting in Part Motion to Dismiss **(#379)**, at 7, 9–11.
The Order also specifically addressed claims for equal protection and racial discrimination,
concluding that "[a]lthough Mr. Parker alleges that Lieutenant Piper made a racial comment,
there is no allegation linking the comment to any action taken against him."  *See* March 25, 2010
Opinion and Order Granting in Part Motion to Dismiss **(#379)**, at 7 n.6.

an adverse judgment: file a motion to alter or amend an order or judgment pursuant to

Fed.R.Civ.P. 59(e) or file a motion seeking relief from an order or judgment pursuant to

Fed.R.Civ.P. 60(b). *See Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir.1991).

Because Mr. Parker's motion was filed more than 28 days after the Order from which he seeks

relief, his motion is governed by Rule 60(b). *See* Fed.R.Civ.P. 59(e).  Rule 60(b) permits the

Court to reconsider an order due to, inter alia, a substantive "mistake of law or fact" by the

Court, Fed.R.Civ.P. 60(b)(1), *Yapp v. Excel Corp.*, 186 F.3d 1222, 1231 (10th Cir.1999), "newly

discovered evidence that, with reasonable diligence, could not have been discovered [earlier],"

Fed.R.Civ.P. 60(b)(2), or as a result of "any other reason that justifies relief."  Fed.R.Civ.P.

60(b)(6).

Here, Mr. Parker contends that relief from the order of dismissal is warranted because the

Court did not correctly determine the facts.  Mr. Parker contends that there is an inconsistency in

the Court's factual recitation,[8] that certain factual statements are in error,[9] and that his claim for

---

[8] He contends that the Court's notation that Mr. Parker had not alleged that he had notified anyone of the danger to him from gangs at AVCF prior to his placement there, *see* Order (**#379**), at 7 n.6, is directly contradicted by a later statement that during his entry interview at AVCF, Mr. Parker told Lieutenant Lucero that he had previously been assaulted by gang members and requested protection, *see id.* at 3.

Although statements in complaints can be inconsistent without impacting the determination of a motion to dismiss, these statements are not.  The first statement refers to the absence of an allegation that Mr. Parker made a complaints *prior to his placement* at AVCF. This was pertinent to the determination of whether Mr. Parker had adequately stated a claim for failure to protect for his placement at the entire facility.  The second statement refers to Mr. Parker's  complaints *upon his arrival* at AVCF.  This is pertinent to his pending claim for failure to protect at AVCF.

[9] Mr. Parker argues that he alleged that he was in close proximity to any gang members at CCF.  He cites to the portion of the Amended Complaint in which he states that upon his transfer to CCF, he was "placed in a pod with members of the Serenos X13 gang that are on his enemy alert list."  *See* Amended Complaint (**#191**), at ¶ 55.  Indeed, the Court noted that Mr. Parker was placed in a "pod" with gang members, but also noted he had no interaction with them

failure to protect at BVCF should be reinstated.

The first two contentions do not justify reconsideration because the recitation of the facts in the Order on the Motion to Dismiss (**#349**) referred only to the allegations made by Mr. Parker in the Amended Complaint (and other documents before the Court).  The Court did not determine these to be true or false, only whether they were sufficient to state the claims that he identified.  Because he does not identify any factual allegation that would satisfy the deficiencies specified in the Order, dismissal of certain claims remains appropriate.

Mr. Parker's third contention is that his claim for failure to protect at BVCF should be reinstated.  The Court dismissed this claim for failure to allege that he was in any danger while at BVCF.  Now Mr. Parker directs the Court to his Exhibit X-10 (**#429**), which is a record of an "Inmate Staffing Roundtable," dated August 21, 2008.  This document states "Offender Parker will probably need to be moved out.  He was beat up at BVCC and AVCF."

Again, construing pleadings most liberally to Mr. Parker, the Court assumes (without deciding) that this document has been newly discovered and for that reason was not timely included in the allegations of or as an exhibit to the Amended Complaint.  Assuming that it had been timely presented, the Court's reasoning would not have changed, however.

"BVCC" is an acronym for the Buena Vista Correctional Complex, which includes

---

because all prisoners at CCF are on lock-down 23 hours per day.  Even if the Court were to consider Mr. Parker's new allegation that "CCF was not totally lock-down[;] their [sic] was some interaction with offenders at CCF," the conclusion would be the same: there has been no factual allegation as to Mr. Parker's proximity to any gang members.  Without any specificity as to what a "pod" consists of, the interaction between inmates in CCF, which is undisputedly an administrative segregation facility, or the specific circumstances under which Mr. Parker was in close proximity to gang members, Mr. Parker's allegations are insufficient to state a claim for failure to protect at CCF because they do not establish that Mr. Parker was objectively under a substantial risk of harm at CCF.  *See Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003).

BVCF.  Thus, this evidence construed most favorably to Mr. Parker,  indicates that as of Aug.

21, 2008, some staffers were aware that Mr. Parker had been "beaten up" at BVCF and AVCF.

However, these facts taken as true, remain insufficient to state a claim failure to protect at

BVCF.  This document does not disclose when the event at BVCF occurred, who the offender

was, or whether any action was taken by officials at BVCF or BVCC.  Accordingly,

reconsideration would result in the same determination—Mr. Parker has not adequately alleged a

failure to protect claim for his placement at BVCF.

Accordingly, Mr. Parker's Motion to Dismiss Defendants [sic] Motion for Summary

Judgment Due to the Fact Genuine Issue's [sic] of Material Fact Exist and Grant Relief Under

Rule 38, 40a" (**#404**) is **DENIED**.

C.     **Exhibits for Consideration in Conjunction with the Defendant's Motion for
        Summary Judgment**

Although the scope of Mr. Parker's "Affidavit to Invoke Personal Knowledge of Claims"

(**#412**) is somewhat unclear, the Court understands him to request that the Court treat all

allegations in Amended Complaint as verified.  In accordance with its obligation to liberally

construe Mr. Parker's pleadings, the Court treats all allegations for which Mr. Parker has

personal knowledge as if they had been attested to under penalty of perjury.  Accordingly, to this

extent the Motion (**#412**) is **GRANTED**.  To the extent that the Motion seeks any other relief, it

is **DENIED**.

In two separate motions (**#416** and **#429**), Mr. Parker submits exhibits in opposition to

the Defendants' Motion for Summary Judgment.  The Defendants oppose these requests as

untimely, but have not demonstrated that any prejudice that would result if the Court were to

consider them.  Indeed, they contend that the exhibits are irrelevant.  Accordingly, to provide

Mr. Parker with the full opportunity to present his arguments, the Court **GRANTS** the motions (**#416** and **#429**) to the extent they seek to submit exhibits for the Court's consideration in connection with the Defendants' Motion for Summary Judgment.  The motions are **DENIED** insofar as they seek any additional relief.

### D.      Additional Discovery of "Institutional File" and Recording of Administrative Segregation Hearing

Mr. Parker has filed several motions related to discovery of (i) his prison records including his Institutional File and Security Threat Group File, which the Court understands to include records of the complaints that Mr. Parker has made to CDOC officials about the threat to his safety from incarcerated gang members; and (ii) a recording[10] of an "administrative segregation hearing,"

With respect to his prison files, Mr. Parker requests that the Court conduct an *in camera* review of the files because they have either not been provided to him based on a claim of privilege or institutional security or provided in redacted form.  He does not identify the specific information that he contends is missing; instead, he states only that the Defendants are withholding information that would support his claims.

With respect to the recording of the hearing on administrative segregation, Mr. Parker requests that this Court not only consider it in connection with the Defendants Motion for

---

[10]  The recording of the administrative segregation hearing is also the subject of (i) Mr. Parker's discovery motions (**#349, 357**) and (ii) Mr. Parker's Objection (**#403**) to the Magistrate Judge's Ruling (**#396**) denying his Motion (**#388**) for discovery of the recording.  These motions/objections pertained to the use of the recording in responding to Defendants' first Motion for Summary Judgment (**#330**) and in supporting his own Motion for Summary Judgment (**#341),** which are now moot.  Nevertheless, the Court considers Mr. Parker's arguments with respect to the recording in conjunction with the current motions.

Summary Judgment, but also that it retrieve the recording from the Defendants.  He admits that he had heard the recording but does not state why he is unable to submit the evidence.  It is unclear on what precise date this hearing occurred–( **#349**) states that the hearing occurred on November 24, 2008; (**#357**) states that the hearing occurred on November 23, 2009.  It is also unclear what the purpose and scope of this hearing were.  Based on the name that Mr. Parker has ascribed to the recording and the fact that the conduct at issue in this case occurred at the prison, it may have involved a prison facility's hearing on administrative segregation.  However, Mr. Parker also has stated that it pertains to a November 20, 2008 Scheduling Conference before the Magistrate Judge.  He contends that at this hearing, Ms. Webster threatened him with administrative segregation in retaliation for his pursuit of his claims in this lawsuit.

This Court has previously addressed the disclosure of each of these items.  On January 28, 2010, the Magistrate Judge addressed (**#315**) various motions to compel filed by Mr. Parker. With respect to Mr. Parker's request for his "Institutional File," the Magistrate Judge noted that the Defendants had produced portions of the file to Mr. Parker, excluding the portions that the Defendants deemed "security sensitive documents."  As the Magistrate Judge understood Mr. Parker to complain only that other documents were produced in conjunction with his Institutional File, not that portions of the file were not produced, she did not address whether the Defendants' production was sufficient nor did she order any further production.  *See* Minute Order dated 1/28/2010 (**#315**), at 7–8.  As to Mr. Parker's request for "transfer, custody records which includes a copy of the plaintiff's enemy list," the Magistrate Judge ordered the Defendants to produce "the list maintained by CDOC which contains the names of those inmates who Plaintiff has identified as his enemies," but authorized the Defendants to exclude or redact the names of other inmates who have reported threats from or fear of Mr. Parker.  *See id.* at 9.

11

Finally, as to the "Security Threat Group" documents that discussed complaints by Mr. Parker, including records regarding "every time plaintiff went and talked to security, case manager, administrator, sent letters," the Defendants asserted that they should not be required to disclose the information because it constituted gang intelligence.  The Magistrate Judge ordered that the Defendants to either produce the documents, as they related to Mr. Parker only, for *in camera* review or to disclose to Mr. Parker that no such document exists.  *See id.* at 12–13.

On February 16, 2010, Mr. Parker requested reconsideration by the Magistrate Judge (**#327**).  The Magistrate Judge denied the Motion on March 4, 2010 (**#346**).  As to Mr. Parker's request for his institutional file, the Magistrate Judge noted that the Defendants had already disclosed the portions of the file that pertained to Mr. Parker and provided a privilege log as to the remaining documents.  Because Mr. Parker had not made any specific objection to any entry in the privilege log, the Magistrate Judge determined that the Defendants had sufficiently produced the requested Institutional File.  *See* Minute Order dated 3/4/2010 (**#346**), at 3–4.  As to Mr. Parker's request for the Security Threat Group file and the list of the list of Mr. Parker's identified enemies, the Magistrate Judge concluded that Mr. Parker had not made any argument as to why disclosure beyond that ordered in the previous order was warranted.

On February 23, 2010, Mr. Parker requested that the Defendants be ordered to produce the recording (**#334**) so that he could present the recording as evidence during the Court's hearing regarding his Motion for Preliminary Injunction.  The Magistrate Judge denied (**#338**) the Motion, concluding that Mr. Parker's request was untimely and he had not adequately explained how the recording was relevant to the Motion for Preliminary Injunction.

On April 1, 2010, Mr. Parker filed a "Motion to Grant Subpoena's [sic] for Plaintiff's Files and Administrative Hearing Disk" (**#388**).  The Magistrate Judge concluded that the

requests were untimely and had already been determined in previous orders.  As to the disclosure

of Mr. Parker's prison records, however, the Magistrate Judge noted that the Defendants had not

filed a certificate of compliance regarding the Court's January 28, 2010 Order (**#315**), which

required production of Mr. Parker's prison files for *in camera* review or notice to Mr. Parker that

no such files existed.  Accordingly, the Magistrate Judge ordered compliance by April 9, 2010.

On April 9, 2010, the Defendants filed a Certificate of Compliance (**#400**), stating that

they had provided redacted copies of all of the documents in Mr. Parker's prison file that were

covered by his discovery requests.

Turning to Mr. Parker's current motions and requests for disclosure and *in

camera* review, the Court notes that the motions essentially request what has already been

denied—production of non-redacted prison files for *in camera* review and production of the

recording of the administrative segregation hearing for consideration in connection with the

Defendants' Motion for Summary Judgment.  Mr. Parker has not provided any colorable

argument as to why such actions are necessary.  As to the request for *in camera* review of the

contents of his Institutional File, Security Threat Group File, and list of enemies, Mr. Parker

alleges only that the Defendants are hiding something by redacting portions of the documents.

He provides no basis for this allegation and does not include any specific objections to any

particular entry in the privilege log.  Nor does he address the Defendants' contention that the

portions that are redacted relate to other inmates.  Conclusory allegations that the redacted

portions support his claims and that he is unable to defend the Motion for Summary Judgment

without the documents are not sufficient.  Accordingly, the Court finds that Mr. Parker has not

provided a sufficient basis on which to conduct an *in camera* review of these documents.

As to the recording of the administrative segregation hearing, Mr. Parker acknowledges

that he has listened to the recording, but provides no detail as to the contents and how they support his claims, nor any reason why he has been unable to provide the recording himself. Accordingly, the Court declines to order the Defendants to produce the recording as its relevance is unclear and Mr. Parker could have submitted it himself.

Accordingly, Mr. Parker's Motions **(#411, 428, 440, 441)** are **DENIED**.

### IV.   Material Facts

The Court has reviewed all of the parties' submissions.  For purposes of this Motion only, the Court construes all disputed facts most favorably to Mr. Smith.  Furthermore, because Mr. Smith is proceeding *pro se*, the Court construes his pleadings liberally, treating all allegations for which he has personal knowledge as if they had been attested to under penalty of perjury.  Viewing the facts in such light, the material facts are as follows.

In 2004, Mr. Parker completed a term of incarceration in the CDOC.  During this term of incarceration, he was assaulted and threatened by members of certain a gang or gangs who believed that he had cooperated with law enforcement in a case in Chicago.

In 2008, Mr. Parker plead guilty to a drug offense and was sentenced to a term of 12 years of imprisonment in the CDOC.  After a short, initial placement in the Denver Reception and Diagnostic Center ("DRDC"), Mr. Parker was designated to serve his sentence in the Arkansas Valley Correctional Facility ("AVCF").  During his entry interview with Lieutenant Lucero,[11] a Gang Intelligence Officer, Mr. Parker recounted the previous assaults by gang members and requested protection.  He iterated this request in letters to Defendants Zavaras (Director of the Colorado Department of Corrections), Arellano (Warden of AVCF), and

---

[11]  Lieutenant Lucero is not a defendant in this action.

14

Hollenbeck (responsible for approving placements and transfers through the CDOC).  Despite these requests, Mr. Parker was released into the general population at AVCF.  As a result, Mr. Parker initiated this lawsuit on April 4, 2008, challenging the CDOC's policies regarding protective custody and alleging he was assaulted as a result of the policies.

While at AVCF, Mr. Parker was assigned to Housing Unit #6.  He told Captain Hall of the danger he faced from gang members in that housing unit.  She responded that he should "man up and fight, do what you need to do, handle your business."  Mr. Parker was placed in a cell with a gang member from one of the gangs that he feared.  Mr. Parker was assaulted sometime in April 2008 under unidentified circumstances, and again on June 5, 2008 by his cellmate.  Shortly after the June 2008 assault, but apparently unrelated to the assault, Mr. Parker's cell was searched and a shank was found.  Both Mr. Parker and his cellmate were placed in administrative segregation.

Apparently in an effort to protect him from the gangs at AVCF, but despite his warning that he would face danger from gangs at LCF, Mr. Parker was transferred to the Limon Correctional Facility ("LCF").[12]  While at LCF, Mr. Parker states that Lieutenant Piper told Mr.

---

[12]  A "custody issue" information sheet dated 8/22/2008, submitted by Mr. Parker, recites that "[Omitted name of another inmate #1] held Parker's cell door shut while he was assaulted by 2 offenders. [Inmate #1] also tried to lure him into a situation where he was going to get assaulted by numerous offenders."  *See* Mr. Parker's Exhibit X-29, filed at **#416**, p. 12.  Mr. Parker's hand-written description on this sheet states that "This is the continuation of the [omitted name of inmate #2] situation and others holding my door down at A.V.C.F. in 2001 and when I was transferred to L.C.F. again in 2008, [inmate #1] and other offenders gang-members tryed [sic] to trick me into population so they could mess me up finish their business. . . .  This is at Limon Facility. . . .  The Plaintiff was threaten [sic] at Limon Facility."

This exhibit appears to demonstrate that Mr. Parker was assaulted on August 22, 2008. However, the custody issue sheet does not clearly state the date of the assault itself, as opposed to the report or the attempt to lure Mr. Parker into an assaultive situation, and does not state the facility at which the incident occurred.  Mr. Parker's hand-written comments confuse the issue as they reference a similar assault at AVCF in 2001 and seem to limit the occurrence at LCF to

Parker that if he did not sign a statement to be cleared to enter the general population, that he would tell all the inmates that he was a snitch.  Lieutenant Piper then placed Mr. Parker in a cell with a pink tag indicating that he was a snitch and stated to Mr. Parker "since you requesting P.C.[13] (my help) then you will sweat until I transfer you."

Mr. Parker was subsequently transferred to the Buena Vista Correctional Facility ("BVCF"), even though he had previously advised the personnel at the DRDC that he would also be in danger at BVCF.  At BVCF, Lieutenant McCormick advised Mr. Parker that he had the choice of returning to LCF or be sent to administrative segregation for 3-5 years, "due to the fact that we are tired of you and all these custody issues and lawsuits" and that Mr. Parker's placement in administrative segregation would "kill that lawsuit, solve the lawsuit problems." Mr. Parker was placed in administrative segregation at BVCF, but then apparently was released from administrative segregation.  In September 2008, while in the dining hall at BVCF, Mr. Parker was confronted and threatened by a group of gang members.

After reporting this incident to Lieutenant McCormick, Mr. Parker was transferred to the Centennial Correctional Facility ("CCF").  Prisoners at CCF are on lock-down 23 hours each day.  Although generally inmates at CCF are provided with the opportunity for outdoor exercise, *see* Recommendation on Mr. Parker's Motion for Preliminary Injunction (**#398**), Findings of Fact at 4–5, Mr. Parker is restricted to indoor exercise for one hour five times a week, and is not

---

threats.  The Amended Complaint (**#191**) states that Mr. Parker was housed at LCF in August 2008, but makes no reference to an assault there.  It does, however, state that on August 22, 2008, Mr. Parker filed a grievance concerning custody issues.  Accordingly, even if viewed in the light most favorable to Mr. Parker, the Court concludes that Exhibit X-29 does not provide sufficient clarity to demonstrate that any assault occurred on August 22, 2008 at LCF.

[13] The Court understands this to mean "protective custody."

permitted outdoor exercise.  He contends that he has not had any outdoor exercise since November 2008, and that as a result his mental health has deteriorated.[14]

Mr. Parker states that while at CCF, Ms. Webster has told him that he will be placed in administrative segregation indefinitely and "for real and for good" if he does not stop filing grievances and initiating lawsuits.  Mr. Parker alleges that Ms. Webster has made these comments numerous times, including during the November 2008 scheduling conference in this case.  He further contends that he was indeed placed at Colorado State Penitentiary ("CSP") "24-7 lock-down" by Ms. Webster.

In an Order (**#379**) addressing a Motion to Dismiss (**#201**) filed by the Defendants, the Court reviewed all of Mr. Parker's factual allegations concluding that the allegations potentially gave rise to six different claims.  After analysis of the Defendants' assertion of qualified immunity in the context of a motion to dismiss, however, the Court concluded that only three claims were sufficiently plead.  The three remaining claims are (1) an Eighth Amendment failure to protect claim for inaction during Mr. Parker's confinement at AVCF against Director Zavaras, Warden Arellano, Mr. Hollenback, and Captain Hall; (2) an Eighth Amendment conditions of confinement claim for lack of outdoor exercise during Mr. Parker's confinement at CCF (and/or CSP) against the CDOC, which is limited to injunctive relief;[15] and (3) a retaliation claim against

---

[14]  Mr. Parker was apparently housed at the Colorado State Penitentiary ("CSP") from July 2009 for some amount of time.  *See* Recommendation on Mr. Parker's Motion for Preliminary Injunction (**#398**), Findings of Fact at 4–5.  He has, however, been moved back to CCF, as demonstrated by the CDOC's Inmate Locator and Mr. Parker's notification, *see* "Motion Request to Rule on Claims - Brief'd" (**#457**) ¶ 4.C.

[15]  The Court concluded that Mr. Parker's only remedy for this violation was injunctive relief as it was brought solely against the CDOC and the Eleventh Amendment bars damages claims against state entities.  *See* Opinion and Order Granting in Part Motion to Dismiss (**#379**), at 20–21 (citing *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990)).

Lieutenant McCormick, Ms. Webster, and Lieutenant Piper for actions taken against Mr. Parker based on his filing of this lawsuit.

## V.   Standard of Review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

When the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine

dispute as to a material fact, a trial is required.  If there is no genuine dispute as to any material fact, no trial is required.  The court then applies the law to the undisputed facts and enters judgment.

When the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove.  If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required.  If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## VI.    Analysis

### A.    Failure to Protect at AVCF

Defendants Zavaras, Arellano, Hollenbeck, and Hall move for summary judgment on this claim under three theories: (i) Mr. Parker has not demonstrated personal participation by Defendants Zavaras, Arellano, and Hollenbeck; (ii) Mr. Parker has not presented sufficient evidence for a *prima facie* case; and (iii) they are entitled to qualified immunity.  Mr. Parker responds that he has validly asserted a claim for failure to protect against all of the Defendants and that they are not entitled to qualified immunity.

The Court turns first to Defendants Zavaras, Arellano, and Hollenbeck's argument regarding personal participation.  Individual liability under section 1983 must be based on personal involvement in the alleged constitutional violation.  *See Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997).  Thus, a supervisor may only be personally liable for the actions of an subordinate if the supervisor personally participated in the conduct, exercised control or direction over it, failed to supervise, failed to train, or tacitly authorized the conduct that resulted

in the constitutional deprivation.  *See Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir.

2008); *Currier v. Doran*, 242 F.3d 905, 925 (10th Cir. 2001).  In other words, there must be an

affirmative link between the constitutional deprivation and the supervisor's personal actions.

*See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).

Here, Defendants Zavaras, Arrellano and Hollenbeck argue that Mr. Parker has not

demonstrated that they personally participated in the alleged failure to protect.  They contend

that Mr. Parker's allegations that he sent them letters and/or grievances are not sufficient to

demonstrate their personal participation.  The Defendants are correct that participation in the

grievance process, without any connection to the violation of constitutional rights, generally is

insufficient to establish personal participation.  *See, e.g.*, *Gallagher v. Shelton*, 587 F.3d 1063,

1069 (10th Cir. 2009); *Walker v. Meyer*, 2009 WL 961490, at *4 (D. Colo. Apr. 7, 2009)

(unpublished).  In some circumstances, however, participation in the grievance procedure can be

sufficient to establish personal participation with regard to a failure to protect, if the unlawful

conduct is the failure to appropriately respond to the grievance itself.  *See Verdecia v. Adams*,

327 F.3d 1171, 1175 (10th Cir. 2003) (a failure to act claim requires a showing of subjective

knowledge of an objective substantial risk of harm and deliberate indifference to the risk, *i.e.*,

failure to act); *Howard v. Waide*, 534 F.3d 1227, 1237 (10th Cir. 2008) (holding that

"[r]egardless of how prison officials become subjectively aware of a substantial risk of serious

harm to an inmate . . . , the Eighth Amendment requires them to respond reasonably" and noting

that the plaintiff in that case had provided notice of his fears in both meetings and grievances).

For participation in the grievance procedure to be adequate to establish personal participation,

however, the prison official must be in a position to remedy the grievance or complaint.  Absent

such requirement, a plaintiff asserting a failure to protect claim could sue  every prison official

20

who was even marginally involved in the grievance process.

In this case, Mr. Parker's failure to act claim is limited to his placement at AVCF in a housing unit with gang members. To establish personal participation, Mr. Parker must show that each named defendant was in the position to affect or determine his placement in the particular housing unit. He has not done so.

The record shows that Director Zavaras is the Executive Director of CDOC and is "responsible for the policies and administration of that agency," but nothing more. As to Warden Arellano, the record offers nothing with regard to his duties or role in Mr. Parker's placement at AVCF. The record reveals only that Mr. Hollenbeck was responsible for "approving all transfers and inmate moves in the Department of Corrections." Because no evidence has been presented to show that Director Zavaras, Warden Arellano or Mr. Hollenbeck assigned (or was authorized to assign) Mr. Parker to a particular housing unit at AVCF, the Court cannot find a sufficient showing of personal participation. Consequently, each of them is entitled to judgment in his favor and the Motion for Summary Judgment is **GRANTED** insofar as it seeks summary judgment in favor of Director Zavaras, Warden Arellano, and Mr. Hollenbeck on the failure to protect claim.

The remaining defendant is Captain Hall, who apparently concedes her personal participation in the alleged constitutional violation as she did not move for summary judgment on this ground. Notably, however, the record reveals that Captain Hall was the Commander of Housing Unit #6, where Mr. Parker was placed and that Mr. Parker personally informed Captain Hall of the danger he faced from certain gang members. A reasonable inference from these allegations is that Captain Hall had some degree of control over the cell assignments in the unit. Captain Hall asserts qualified immunity.

21

When a defendant raises a qualified immunity defense, the burden shifts to a plaintiff to satisfy a two-part test. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Green v. Post*, 574 F.3d 1294, 1300 (10th Cir. 2009). A plaintiff must show that he or she had a constitutional right that was infringed (the "violation prong"), and that such right was clearly established at the time of the alleged infringement (the "clearly established prong"). Although a plaintiff must ultimately establish both elements to avoid application of the doctrine, the Court has discretion to consider the elements in any order. *See Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009); *Green*, 574 F.3d at 1299.

With respect to the violation prong, a plaintiff must show that the defendant's actions deprived him or her of a constitutional or statutory right. *See Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995). Identification of a constitutional right in the abstract is insufficient; instead, a plaintiff must precisely articulate the clearly established right that was allegedly violated and specifically identify the defendant's conduct that violated the right. *See Green*, 574 F.3d at 1300.

For the clearly established prong, the question is whether the identified right was clearly established based on the specific facts of the case. *Brosseau v. Haugen*, 543 U.S. 194, 199–200 (2004). Typically, the inquiry is whether, on the operative date, there was binding authority from the Supreme Court or Tenth Circuit (or the clear weight of authority from other circuits) recognizing that particular conduct would constitute a violation of federal law. *York v. City of Las Cruces*, 523 F.3d 1205, 1211–12 (10th Cir. 2008). The inquiry is not whether there was previous case with identical facts, but instead, whether prior caselaw put the defendants on notice that the alleged conduct would be unconstitutional. *See Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006). This is essentially a legal question and is measured by an objective

standard.  *See Crawford-El v. Britton,* 523 U.S. 574, 589-90 (1998).

In this case, the Court previously determined that it was clearly established "that a prison official's decision to ignore an inmate's specific allegations that he was in danger from specific gangs and to place him in a cell with gang members violates the prisoner's constitutional rights." *See* Opinion and Order Granting In Part Motion to Dismiss (**#379**), at 16 (relying on *Verdecia,* 327 F.3d at 1175; *Howard,* 534 F.3d 1227).  The Court sees no reason to vary from this legal determination.  Thus, the question becomes whether Mr. Parker has presented sufficient evidence to establish a *prima facie* case.

As with all Eighth Amendment claims, to establish a failure to protect claim, the plaintiff must show both an objective component—that he is incarcerated under conditions posing a substantial risk of serious harm—and a subjective component—that the prison official acted with deliberate indifference to the prisoner's safety.  The subjective component requires that a prison official be aware of facts from which it can be concluded that a substantial risk of harm exists and that the official draw such inference.  Mere negligence is not sufficient to establish "deliberate indifference"; rather, the standard requires recklessness, *i.e.*, disregarding a risk of which the official was aware.  *See Verdecia,* 327 F.3d at 1175; *Howard,* 534 F.3d at 1236.

Mr. Parker's attestations are sufficient to establish a claim against Captain Hall.  Mr. Parker attests that he had been labeled a snitch by a particular gang, that he had been assaulted by members of that gang, and that members of the gang remained active in the prison system.  This evidence, viewed in the light most favorable to Mr. Parker, establishes an objective substantial risk of harm.  *See Howard,* 534 F.3d at 1237 (holding that the threat of future sexual assault, based on past assaults by a particular gang, was sufficient for the failure to protect objective prong); *Curley v. Perry*, 246 F.3d 1278, 1282 (10th Cir. 2001) (holding that the  threat

23

of physical assaults is sufficiently "serious" under the failure to protect rubric).

As for the subjective prong, Mr. Parker states that prior to his placement in Housing Unit #6, he informed Captain Hall of the particular danger he faced from gang members in that housing unit. She responded that he should "man up and fight, do what you need to do, handle your business." This is sufficient to demonstrate that Captain Hall was subjectively aware of the risk that Mr. Parker faced and that she disregarded such risk.[16] Captain Hall's statement demonstrates that she was aware of the alleged danger and chose not to address it. The fact that Mr. Parker did not alert Captain Hall as to the danger from a particular gang member, *i.e.*, his cellmate, does not change the calculus. Captain Hall's statement indicates a disregard for the risk regardless of whether it arose inside or outside of Mr. Parker's cell. *See Howard*, 534 F.3d at 1236 ("For Eighth Amendment purposes, it does not matter whether the risk comes from a single source or multiple sources.")

Accordingly, the Court **DENIES** the Motion for Summary Judgment as to the claim for failure to protect against Captain Hall, and **DENIES** her request for qualified immunity.

### B.     Cruel and Unusual Punishment

The CDOC moves for summary judgment on Mr. Parker's cruel and unusual punishment claim for his placement in administrative segregation contending that Mr. Parker cannot establish a *prima facie* case of cruel and unusual punishment. Mr. Parker responds that his placement in administrative segregation, without any outdoor exercise, since November 2008 establishes an Eighth Amendment violation.

---

[16] Captain Hall's argument that there was no deliberate indifference to the danger Mr. Parker faced because Mr. Parker was subsequently transferred multiple times to different prison facilities for safety reasons is without merit, because this claim is limited to Mr. Parker's placement within AVCF.

As noted *supra*, an Eighth Amendment claim has both an objective component—whether the deprivation is sufficiently serious—and a subjective component—whether the official acted with a sufficiently culpable state of mind. *See Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 809 (10th Cir. 1999) (citing *Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991)).  The objective component is satisfied by a showing of unnecessary and wanton infliction of pain, sentences that are grossly disproportionate to the severity of the crime, or conditions that result in an unquestioned and serious deprivation of basic human needs. *See Mitchell v. Maynard*, 80 F.3d 1433, 1441–42 (10th Cir. 1996).  Thus, prisons must provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from bodily harm. *See Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  In cases challenging the conditions of a prisoner's confinement, the subjective standard is one of deliberate indifference to inmate health or safety. *See Perkins*, 165 F.3d at 809 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  A court may infer that a prison official knew of a substantial risk from the very fact that the risk was obvious.

With respect to outdoor exercise, the Tenth Circuit has acknowledged that some degree of regular outdoor exercise is important to prisoners' psychological and physical well being. *See Bailey v. Shillinger*, 828 F.2d 651, 653 (10th Cir. 1987).  It has also determined that although denial of outdoor exercise is not a *per se* Eighth Amendment violation, continuous and prolonged denial of outdoor exercise can constitute an Eighth Amendment claim. *See Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir. 2006) (finding that an extended deprivation of outdoor exercise (three years) was a sufficiently serious deprivation). *But see Ajaj v. United States*, 293 Fed. App'x , 584 (10th Cir. 2008) (unpublished) (concluding that deprivation of outdoor exercise

for a year was insufficiently serious to constitute an Eighth Amendment violation).[17]

Mr. Parker states that he has not been provided any outdoor exercise since November 2008, and for purposes of this motion, the Defendants agree.   This would mean that Mr. Parker has had no outdoor exercise for approximately two years and five months.  Viewed solely from a temporal perspective, a reasonable factfinder could determine that the denial of outdoor exercise for such an extended amount of time is sufficiently serious and that the CDOC acted with deliberate indifference in denying any outdoor exercise for this amount of time.  *See Fogle*, 435 F.3d at 1260.

The Defendants justify Mr. Parker's inability to exercise outdoors by saying that this is a function of CDOC rules.  Inmates at CSP are categorically denied access to outdoor recreation, in order to create an incentive for inmates to exhibit good behavior and earn a transfer to CCF, where outdoor exercise is permitted.  This argument misses the mark.  Continuous and prolonged deprivation of outdoor exercise can constitute an Eighth Amendment violation, regardless of whether the motives for withholding access to the outdoors are benign or malevolent.  This is not to say that CDOC cannot use the carrot of greater outdoor recreation as an inducement to CSP

---

[17]   The CDOC's argument that exercise in an exercise room is sufficient is not persuasive. The case that it cites, *James v. Wiley*, 125 F.3d 862 (Table), 1997 WL 606985, at *2 (10th Cir. Oct. 2, 1997) (unpublished), does not support such a proposition.  In *James*, the Tenth Circuit stated that "[w]e have held that a prison exercise cell in an administrative segregation unit meets the minimum standards for exposure to fresh air and exercise."  For this proposition *James* cited to *Housley v. Dodson*, 41 F.3d 597, 599 (10th Cir. 1994).  *Housley*, however, did not conclude that exercise in a prison cell was adequate to meet the outdoor exercise requirement.  Rather, *Housley* determined that a prisoner's allegation that he had received only thirty minutes of out of cell exercise during a three month period was sufficient to state an Eighth Amendment claim.  In making this determination, *Housley* observed that what constitutes adequate exercise will depend on the circumstances of each case, including the physical characteristics of the cell and jail and the average length of stay of the inmates."  This is not inconsistent with *Fogle's* conclusion that continuous and prolonged denial of outdoor exercise can run afoul of the Eighth Amendment. *See* 435 F.3d at 1260.

inmates to reform their behavior; indeed, the caselaw cited above recognizes that outdoor recreation can be withheld for some limited period of time without running afoul of the Eighth Amendment. But at some point in time -- a point in time not susceptible to the drawing of a bright line rule -- the deprivation of all outdoor exercise for a prolonged period becomes a constitutional violation regardless of whether it is imposed for corrective or vindictive reasons.

Moreover, it is not clear that the prison operations rules act as a carrot for Mr. Parker. Here, the Defendants imply that if Mr. Parker complied with the rules, he could have outdoor recreation and exercise. This is not at all apparent from the record. There is evidence that Mr. Parker in administrative segregation because he is subject to risk of attack by other inmates. To the extent that his preclusion from outdoor exercise is related to security concerns, his compliance with the rules will have no beneficial effect.

Finally, the Defendants' general assertion that prison management should be left to the discretion of prison officials is unavailing. There may be circumstances where ensuring an inmate's safety requires that he/she not be exposed to outdoor recreation, but such showing has not been made in this case. The showing by Mr. Parker is sufficient for a *prima facie* claim, and accordingly, summary judgment on this claim is **DENIED**.

### C. Retaliation

With respect to the retaliation claim, Defendants Webster, McCormick, and Piper argue that Mr. Parker is not entitled to any relief, summary judgment should enter in their favor.

In its previous Order, the Court determined that because Mr. Parker had not alleged a physical injury resulting from the alleged retaliation, he was not entitled to any compensatory damages pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e). *See* Opinion and Order Granting In Part Motion to Dismiss (**#379**) at 22. Additionally, the Court concluded that

because the retaliation claim was based solely on discrete, past acts, Mr. Parker was not entitled to an injunction.

The Defendants now argue that this precludes Mr. Parker's claim in its entirety.  Mr. Parker responds that he seeks only nominal damages and that he seeks an ongoing injunction against retaliation by Ms. Webster.

The Court rejects the Defendants' arguments.  Nominal damages are an available remedy for § 1983 claims.  *See Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 (1986); *Manzanares v. City of Albuquerque*, 628 F.3d 1237, 1241–42 (10th Cir. 2010).  In addition, if ongoing retaliation is proved, Mr. Parker may be entitled to an injunction.

Defendants Webster, McCormick, and Piper also argue that Mr. Parker cannot establish a *prima facie* case against them for retaliation.  To maintain a retaliation claim under section 1983, a plaintiff must demonstrate (1) the plaintiff was engaged in a constitutionally protected activity; (2) the defendant's actions caused the plaintiff to suffer an injury sufficient to chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's adverse action was substantially based on the plaintiff's exercise of a constitutionally protected right. *See Mimics, Inc. v. Vill. of Angel Fire*, 394 F.3d 836, 847 (10th Cir. 2005).  As to the second element, threats are actionable in a § 1983 clam, if they are sufficient to chill a person of reasonable firmness.  *See Smith v. Plati*, 258 F.3d 1167, 1176 (10th Cir. 2001) ("Any form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom.").

The Defendants argue that Mr. Parker cannot demonstrate the element of causation, *i.e.*, that the actual motivating factor behind the Defendants' actions was retaliation for Mr. Parker's

prior or current litigation or filing of grievances.  They contend that Mr. Parker's statements are entirely conclusory in nature and, therefore, insufficient to establish causation.

To examine whether Mr. Parker has adequately demonstrated causation, the Court must first identify the actions that Mr. Parker contends were retaliatory.  He has asserted specific instances in which each of these three Defendants directly threatened him.  Additionally, he has alleged that his current and past placement in administrative segregation was in retaliation for his complaints.  Assuming these to be true, the question is whether any action was accompanied by a retaliatory motive.

As to the specific statements by each of the three Defendants, Mr. Parker attests that Lieutenant Piper told him that because he had requested protective custody, he was going to "make him sweat" by labeling him a snitch while he was in a cell visible to other prisoners, and that Lieutenant Piper carried out this threat.[18]  He contends that Lieutenant McCormick told him that he could choose between returning to a prison where he was in danger from gang members or be sent to administrative segregation for 3-5 years, "due to the fact that we are tired of you and all these custody issues and lawsuits" and that Mr. Parker's placement in administrative segregation would "kill that lawsuit, solve the lawsuit problems."  Finally, he alleges that Ms. Webster has told him that he will be placed in administrative segregation indefinitely and "for real and for good" if he does not stop filing grievances and initiating lawsuits.  Each of these

---

[18]  The Court notes that this alleged threat does not specifically relate to the filing of particular grievance or this lawsuit.  However, as the Defendants have not argued that a request for protection during the intake process at an institution is not protected speech and it is at least somewhat analogous to a grievance, the Court assumes that Mr. Parker was engaging in protected speech when he requested placement in protective custody from Lieutenant Piper.  Indeed, a request for protective custody is essentially a request for measure to be taken to avoid deprivation of constitutional rights, *i.e.*, to be free from cruel and unusual punishment, and, therefore, is analogous to a grievance.

alleged threats reflects a retaliatory motive, either for requesting placement in protective custody or for filing grievances or this lawsuit.  Therefore, construing the evidence most favorably to Mr. Parker, it is sufficient for a *prima facie* showing.

Mr. Parker's allegation that he has been placed in administrative segregation in retaliation for initiating this lawsuit or filing grievances is not as clear.  First, there is insufficient evidence to link the statements of these Defendants to the decisions to place Mr. Parker in administrative segregation.  The Defendants have produced evidence demonstrating that Mr. Parker's placement in administrative segregation was at all times done for safety or disciplinary reasons.  Neither Mr. Parker's allegations that he was provoked into filing grievances and filing this action, nor his conclusory statements rebut this showing by the Defendants.  Assuming, without determining that Mr. Parker's actions were justified, there still is a lack of evidence to show that these individual defendants participated in the decision to place him in administrative segregation based upon a retaliatory motive.  The undisputed evidence is that Mr. Parker requested placement in protective custody, *i.e.*, segregation from groups which he views as threats, and that he has often behaved contrary to prison rules, thus subjecting him to punishment in the form of placement in administrative segregation.

Therefore, the Court **DENIES** the Motion for Summary Judgment **(#401)** on Mr. Parker's claims of retaliation against Defendants Webster, McCormick, and Piper for their threats, but **GRANTS** the Motion for Summary Judgment as to Mr. Parker's claim for retaliation against Defendants Webster, McCormick, and Piper for Mr. Parker's for placement in administrative segregation.

### D.    Motions for Preliminary Injunctive Relief

Mr. Parker seeks preliminary injunctive relief.  As to the three motions currently before

the Court, Mr. Parker seeks injunctive relief for the retaliation he alleges he is experiencing in

the form of continued placement in administrative segregation.  He also seeks injunctive relief to

remedy his restriction from outdoor exercise and the failure to the prison system to accommodate

his religious diet appropriately.  The Defendants oppose these requests.

### 1.      Legal Standard

A temporary restraining order or preliminary injunction is an "extraordinary remedy",

used to preserve the status quo pending a final determination of the parties' rights, and, therefore,

the right to relief must be "clear and unequivocal."  *See Nova Health Sys. v. Edmondson*, 460

F.3d 1295, (10th Cir. 2006); *Otero Savings & Loan Ass'n v. Fed. Reserve Bank of Kansas City,

Mo.*, 665 F.2d 275, 277 (10th Cir. 1981).  The decision to grant injunctive relief is a matter of

discretion.  *See Gen. Motors Corp. v. Urban Gorilla*, LLC, 500 F.3d 1222, 1226 (10th Cir. 2007)

(noting that the Tenth Circuit reviews denials of preliminary injunctions for abuse of discretion).

To obtain a preliminary injunction, the movant must show four factors: (1) a substantial

likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied;

(3) the threatened injury outweighs the harm that the preliminary injunction may cause the

opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.

*See id.*; *Wilderness Workshop v. U.S. Bureau of Land Mgmt.*, 531 F.3d 1220, 1224 (10th Cir.

2008).

### 2.      Analysis

In each of Mr. Parker's motions, he seeks injunctive relief for retaliatory actions he

alleges are being taken against him for his pursuit of claims in this lawsuit.  Although he makes

specific reference to a number of particular incidents, including bogus disciplinary charges for

hair in his comb, forcing him to stand in a shower stall for thirty minutes before turning the

water on, and rearranging the food on his trays, the thrust of Mr. Parker's contention is that he is being housed in administrative segregation in retaliation for raising the claims in this action.  He contends that the particular actions are being taken to provoke him so that the perpetrators have a legitimate reason to hold him in administrative segregation.  In addition to this overall contention, Mr. Parker also complains that he is not being fed a proper religious diet and has been denied all outdoor activity.  As relief, Mr. Parker specifically seeks an order prohibiting the Defendants from engaging in retaliatory actions against him and that his administrative segregation unit be placed under continuous audio and visual surveillance.  Given the nature of his complaints, *i.e.*, that he has been placed in administrative segregation in retaliation and that he has been denied a proper religious diet and outdoor activity, the Court also understands Mr. Parker to seek his release from administrative segregation, an opportunity for outdoor exercise, and the provision of a proper religious diet.

The Defendants respond that Mr. Parker's motions are repetitive of motions for injunctive relief that have been denied; that there is no nexus between the relief sought by Mr. Parker and the underlying claims in the case; that Mr. Parker has not shown a substantial likelihood of success on the merits; and that Mr. Parker has not demonstrated that he will suffer an immediate and irreparable injury if the injunction does not issue.

With respect to Mr. Parker's allegations that he has been denied a proper religious diet and that he has been denied access to outdoor exercise, the Court has already addressed motions for injunctive relief based on these alleged deprivations.  On May 23, 2010, the Court adopted (**#425**) the Magistrate Judge's Recommendation (**#398**) that Mr. Parker's motion (**#256**) for a preliminary injunction requiring he be provided outdoor exercise time be denied.  The Recommendation, adopted by the Court in full, determined that Mr. Parker had not demonstrated

32

any of the four factors necessary to issue a preliminary injunction.  On the same day (**#427**), the Court adopted a separate Recommendation (**#414**) from the Magistrate Judge, recommending that Mr. Parker's motion (**#406**) for a preliminary injunction requiring the CDOC to accommodate his religious beliefs be denied.  The Recommendation, again adopted by the Court in full, determined that although his allegations of inability to practice his religion may assert constitutional violations, they were not related to any claims asserted in this action.  Given these determinations, the Court **DENIES** the instant motions to the extent they are based on Mr. Parker's inability to practice his religion, including by eating a proper religious diet, and restriction to indoor exercise.

As to the main deprivation alleged in Mr. Parker's motions—that he has been placed in administrative segregation for retaliatory purposes—the Court has granted summary judgment to Defendants Webster, McCormick, and Piper for Mr. Parker's placement in administrative segregation.  Accordingly, Mr. Parker's motion for preliminary injunctive relief in the form of release from administrative segregation is not appropriate as it is beyond the scope of Mr. Parker's retaliation claim.  Thus, his motions for preliminary injunctive relief (**#433, 435, 462**) are **DENIED**.

### E.     Motions for Rulings

Mr. Parker has also filed numerous motions regarding the status of this case.  In **#457** and **#463**, Mr. Parker seeks a ruling on pending motions, including the motions for summary judgment.  As the Court has now addressed all of the pending motions in this case, these motions are **DENIED AS MOOT**.

Given the Court's current ruling, a Final Pretrial Conference is appropriate and is scheduled as set forth *infra*.  At the Final Pretrial Conference, trial will be set.  Accordingly, Mr.

Parker's Motion for a Hearing on this Case **(#451)** is **DENIED AS MOOT**.

Finally, Mr. Parker requests an update on his case **(#456)**.  The Court **GRANTS** this motion and instructs that in conjunction with the mailing of a copy of this Order to Mr. Parker, the Clerk of Court is directed to mail a copy of the docket report to Mr. Parker.

**IT IS THEREFORE ORDERED** that:

(1)  Mr. Parker's Motion for Review **(#443)**, construed as a Motion to Amend, is **DENIED**.

(2)  Mr. Parker's "Motion to Dismiss Defendants [sic] Motion for Summary Judgment Due to the Fact Genuine Issue's [sic] of Material Fact Exist and Grant Relief Under Rule 38, 40" **(#404)** is generally deemed a Response and, to the extent it seeks any relief, including reconsideration of the Court's previous Order **(#379)**, is **DENIED**.

(3)  Mr. Parker's "Motion" **(#439)** is deemed to be a surreply, and, to the extent it seeks any  relief is **DENIED**.

(4)  Mr. Parker's "Affidavit to Invoke Personal Knowledge of Claims" **(#412)** is **GRANTED IN PART** to the extent it requests that the Court treat the allegations in his pleadings for which he has personal knowledge as being attested to under penalty of perjury and **DENIED IN PART** insofar as it seeks any other relief.

(5)  Mr. Parker's Motion to Include Exhibits in Motion for Summary Judgment **(#416)** is **GRANTED IN PART** insofar as it seeks consideration of the submitted Exhibits, but **DENIED IN PART** insofar as it seeks any other relief.

(6)  Mr. Parker's Motion to Include Another Exhibit with the Summary Judgment Motion **(#429)** is **GRANTED IN PART** insofar as it seeks consideration of the

submitted Exhibit, but **DENIED IN PART** insofar as it seeks any other relief.

(7)     Mr. Parker's "Motion to Affirm by Notorized [sic] Affidavit All Statements and

Exhibits in Plaintiff [sic] Motion for Summary Judgment" **(#349)** is **DENIED AS**

**MOOT**.

(8)     Mr. Parker's Motion for Evidence Requested to be used as Exhibits **(#357)** is

**DENIED AS MOOT**.

(9)     Mr. Parker's Objection **(#403)** to the Magistrate Judge's Ruling **(#396)** denying

his Motion **(#388)** is **OVERRULED AS MOOT**.

(10)    Mr. Parker's Request for *In Camera* Inspection of his Institutional File **(#411)** is

**DENIED**.

(11)     Mr. Parker's Motion for Hearing or Conference **(#428)** regarding discovery of

his prison records, including his Institutional File, is **DENIED**.

(12)    Mr. Parker's Rule 56(f) motion **(#440)** for additional discovery on his

Institutional File is **DENIED**.

(13)    Mr. Parker's Motion for *In Camera* review of the Institutional File and the

recording of the administrative segregation hearing **(#441)** is **DENIED**.

(14)    Defendants' Motion for Summary Judgment **(#401)** is **GRANTED IN PART**

insofar as it seeks summary judgment in favor of Defendants Zavaras, Arellano,

and Hollenbeck for the claim of failure to protect and insofar as it seeks summary

judgment in favor of Defendants Webster, McCormick, and Piper for the

retaliation claim based on placement in administrative segregation and **DENIED**

insofar as it summary judgment as to any other claim.

(15)    The remaining claims are: (1) an Eighth Amendment failure to protect claim

against Captain Hall based upon alleged inaction during Mr. Parker's confinement at the Arkansas Valley Correction Facility; (2) an Eighth Amendment conditions of confinement claim against the Colorado Department of Corrections based upon alleged lack of outdoor exercise during Mr. Parker's confinement at the Centennial Correctional Facility and/or Colorado State Penitentiary; and (3) a retaliation claim against Lieutenant McCormick, Ms. Webster, and Lieutenant Piper for discrete threats asserted against Mr. Parker based on his filing of this lawsuit or prison grievances.

(16)   Mr. Parker's Motion for Temporary Restraining Order **(#433)** is **DENIED**.

(17)   Mr. Parker's Motion for Injunctive Relief **(#435)** is **DENIED**.

(18)   Mr. Parker's Motion for Temporary Restraining Order, Preliminary Injunction **(#462)** is **DENIED**.

(19)   Mr. Parker's Motion for Ruling **(#457)** is **DENIED AS MOOT**.

(20)   Mr. Parker's Motion for Ruling **(#463)** is **DENIED AS MOOT**.

(21)   A final pretrial conference is scheduled for **July 7, 2011 at 4:00 p.m.** in Courtroom A901 before Judge Marcia S. Krieger.  All provisions of the Court's Trial Preparation Order shall apply to the rescheduled conference.

(22)   Mr. Parker's Motion for a Hearing or Conference on the Case and Pending Motions **(#451)** is **DENIED AS MOOT**.

(23)   Mr. Parker's Motion for Update on Case **(#456)** is **GRANTED**.

(24)   The Clerk of Court is directed to mail a copy of the Docket Report to Mr. Parker.

Dated this 31st day of March, 2011

**BY THE COURT:**

Marcia S. Krieger
United States District Judge

37